[No. 24184.   Department Two.   March 7, 1933.]

E. A. FERRIS, *Respondent*, v. ELIZABETH H. SNIVELY, *as Executrix, Appellant.*[1]

[1]Reported in 19 P. (2d) 942.

168

*Snively & Bounds* and *Robert J. Willis,* for appellant.

*Grady & Velikanje* and *Stanley P. Velikanje,* for respondent.

STEINERT, J.—Plaintiff brought this action to recover compensation for services rendered by him as a law clerk in the office of H. J. Snively, an attorney, now deceased. The complaint contained two causes of action, one for compensation for services rendered between September 1, 1918, and December 31, 1930, for which $1,614.43, with interest, was alleged to be due and owing, and the other for compensation for services rendered between January 1, 1931, and April 18, 1931, for which $300, with interest, was sought to be recovered.

The answer consisted of a general denial, three affirmative defenses to the first cause of action, and one affirmative defense to the second cause of action. The three affirmative defenses to the first cause of action were: (1) that plaintiff had been paid in full; (2) that the cause of action, if any, was barred by the statute of limitations; and (3) that the services rendered were such as only a duly licensed and practicing attorney could perform, and that plaintiff was not such an attorney. The affirmative defense to the second cause of action was that the balance due and owing the plaintiff thereon had been tendered by defendant, re-

fused by plaintiff, and thereupon paid into the registry of the court. The reply denied the allegations contained in the affirmative defenses.

Upon a trial before the court, without a jury, plaintiff was allowed the sum of $455.67 on his first cause of action and $314.35 on the second cause of action. Judgment, segregating in a somewhat different manner but totaling the same amounts, was thereupon entered, from which the defendant has appealed.

Sometime in the year 1902, respondent became a clerk in Mr. Snively's office. As such, he served papers, kept the books, sent out statements, collected accounts, took care of the docket and did other work of a clerical nature. Gradually, however, he began to perform duties that were of a legal nature, such as examining abstracts, preparing wills, handling matters in justice courts, and looking after uncontested probate matters. The arrangement proved mutually satisfactory to the parties.

We are not advised what respondent's compensation was prior to September 1, 1918. On that day, however, Mr. Snively gave the respondent a written memorandum reading as follows:

"Mr. E. A. Ferris:          Yakima, Sept. 1st 1918
"From and after Sep. 1st 1918 till further notice your compensation will be $1600—per year payable in aliquot weekly payments and at the end of each year, all probate fees paid me individually during said year will be computed and if these probate fees exceed eighteen hundred dollars, you will be entitled to one third of the amount in excess of said sum of $1800— as additional compensation. H. J. Snively."

Respondent alleged in his complaint that this memorandum became the basis of an agreement between him and Mr. Snively, with an oral modification thereto to the extent that the specified compensation of $1,600

was increased to $1,800. The evidence showed that, up to the time of Mr. Snively's death on November 17, 1930, respondent was regularly paid the sum of $33.33 per week, aggregating an annual sum of $1,733.16. Upon the opening of the trial, respondent's counsel stated that, inasmuch as the oral modification could be substantiated only by evidence that would fall within the inhibition of Rem. Rev. Stat., § 1211, he would not attempt to prove his claim in so far as it was covered by the oral modification. Thus the portion of respondent's claim based on weekly compensation up to November 17, 1930, is out of the case.

Respondent then introduced evidence to the effect that, shortly after the end of each year, computations were made covering the amount of probate fees paid to Mr. Snively during the preceding year, and that, based on such computation, payments were made to respondent of his proportionate share of such fees, this being considered as additional compensation for services rendered by respondent under the agreement. The respondent claims, however, that Mr. Snively failed to account for certain probate fees paid him during the years 1920, 1922, 1928 and 1930. The amounts which he claims were unaccounted for are as follows: For 1920, $214.56; for 1922, $315; for 1928, $8.83; and for 1930, $118.17; totaling $656.56. Upon the evidence submitted, the court allowed respondent, upon these items, the following sums: For 1920, $67.67; for 1922, $139.-50; for 1928, $8.83; for 1930, $133.17; together with interest on such amounts at the rate of six per cent per annum from November 17, 1930.

The respondent also introduced evidence to the effect that his weekly payments accruing between November 17, 1930, and December 31, 1930, had not been paid in full. Upon this item, the court allowed him, upon

what we think was clearly the weight of the evidence, the sum of $99.97, with interest amounting to $6.53.

After Mr. Snively's death, respondent continued his work in much the same way as he had done before, except that he did not have Mr. Snively's supervision and direction, and except also that, upon the request of Mr. Snively's family, he did a good deal of work in connection with the probate of Mr. Snively's estate. About January 1, 1931, the agreement with Mr. Snively having theretofore been terminated by Mr. Snively's death, respondent was unwilling to continue on the basis of a weekly payment of $33.33, but thought that he should receive at least $50 per week, and so expressed himself to the representatives of the estate and the family. They, however, were unwilling to pay more. Respondent's status, so far as salary was concerned, was thus left more or less uncertain, although he continued to do the work until April 18, 1931.

Between January 17, 1931, and April 18, 1931, eight salary checks were paid to respondent, five of them in the sum of $33.33 each, one in the sum of $50 and two in lump sums of $100 and $150, respectively. The total of these checks, together with the amount tendered into court by the appellant, was sufficient to pay respondent in full for his 1931 services on the basis of $33.33 per week, but not sufficient to pay him in full on the basis of $50 per week.

The trial court, evidently construing the arrangement after January 1, 1931, as a contract for services with no fixed compensation agreed upon, allowed him $50 per week on a *quantum meruit* basis. For this item, therefore, he allowed $300 over and above the amount already paid, together with interest thereon from April 18, 1931, to the time of trial, making a total of $314.35. According to the segregation made in the judgment, $420.85, with interest from February 4,

1932, was allowed for services rendered on the basis of weekly salary and the same made a part of the costs of administration, and $349.17 allowed for unpaid portion of the amounts to be annually computed, the same to be a claim against the estate.

The first and principal contention made by appellant is that the contract providing for the additional compensation, and the services performed in consideration thereof, were illegal, in that they violated Rem. Rev. Stat., § 139-4, which reads as follows:

"No person shall be permitted to practice as an attorney or counselor at law or to do work of a legal nature for compensation, or to represent himself as an attorney or counselor at law or qualified to do work of a legal nature, unless he is a citizen of the United States and a bona fide resident of this state and has been admitted to practice law in this state: Provided, that any person may appear and conduct his own case in any action or proceeding brought by or against him, or may appear in his own behalf in the small claims department of the justice's court; and provided further, that an attorney of another state may appear as counselor in a court of this state without admission, upon satisfying the court that his state grants the same right to attorneys of this state."

Rem. Rev. Stat., § 139-22, makes a violation of this statute a gross misdemeanor.

Appellant contends that the work performed by respondent for Mr. Snively and for the estate was of a legal nature, and such as could have been lawfully performed only by a properly qualified attorney admitted to practice law. While this defense was not specifically interposed to the second cause of action, but only to the first, the proof covered both, and no objection was raised on that score. We therefore deem the pleading amended to conform to the proof. It is admitted that respondent was not a qualified attorney, licensed to practice law.

In order to clearly comprehend the facts upon which appellant's contention rests, it is well to have the evidence before us. Respondent testified as follows:

"Q. In fact, Mr. Ferris, to make a long story short, in a great many of these cases included in your claim you did everything there was to be done in the probate proceedings? A. Usually I did. Q. Both in and out of court? A. Yes, in the matter of contest I didn't though. Q. You also included in that work, mortgages, deeds, wills, contracts, leases and gathered information to prepare those different instruments and advised and handled the instruments, generally speaking, that is correct? A. Yes, sir, under his direction. . . . Q. Now, these probate matters, I mean the matters which we are now getting into, which you are claiming this sum of $1,600 plus, you did all the work as heretofore stated except the cases that were contested? A. Nearly all of it. Q. In cases that were contested you even handled that except where it became a question of going to court on a controverted matter, even in some of those cases you appeared before the probate court? A. Just as I stated before, I had authority from Mr. Snively to represent him, and if the court granted me authority I would appear. Q. You did from time to time? A. I did, yes. Q. Appeared in contested matters in court? A. With the court's permission. Q. But you did, I don't care whose permission? A. I did. . . . Q. You have done examining abstracts again and again? A. Prepared opinions for him to sign. Q. You did all the work? A. I done the work under his direction, he always checked it over and always signed the opinion. Q. Have you never signed an opinion yourself? A. Never did. Q. You have prepared one even in his absence, when he was away on a vacation or when he was sick you did all the examining, you gave a verbal opinion to the parties? A. No, written opinions. Q. Did you give oral opinions to parties at time of examination? A. Just as far as I had gone, but that wasn't final until he passed on it. . . . Q. You prepared a great many wills, did you not? A. Quite a number. Q. And you went out and saw the party yourself, got

the information and came back and prepared the will without any assistance from anybody? A. They were usually submitted to him. Q. You did that? A. Some, yes. Q. And at times you never even submitted them to Mr. Snively? A. Some of them. Q. And you prepared leases, mortgages, bills of sale and contracts upon your own initiative, without submitting them to anybody in the office? A. Yes, but always under his original authority. Q. You are speaking generally— he gave you general authority? A. Yes. Q. But you did it time and again without consulting, on your own initiative? A. Yes. Naturally would as a law clerk. . . . Q. You handled probate matters in the office of Snively & Bounds after November 17, 1930, after his death in 1930? A. Yes. Q. You appeared in court, prepared papers and presented the orders and represented the parties in the probate court, just as you had done before? A. Yes. . . . Q. I will show you Defendant's Identification '5' and ask you to glance through this and ask you if you didn't handle this entire matter for the office of H. J. Snively in all of its details and ramifications, preparing all the papers, presenting them to the court, consulting and advising and everything else that was done? If there is anything you didn't do except where Mr. Maddox's name appears as attorney for the other parties you can so indicate? A. I handled most of that; I think Mr. Snively appeared in court two or three times on some hearing; the drawing of the papers personally I did that. Q. And you also appeared in court different times in this matter? A. At different times.''

The practice of law is defined in 2 R. C. L., p. 938, § 4, as follows:

''According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings, and the management of such actions and proceedings on behalf of clients before judges and courts, and, in addition, convey-ancing, the preparation of legal instruments of all kinds, and, in general, all advice to clients, and all

action taken for them in matters connected with the law. An attorney at law is one who engages in any of these branches of the practice of law."

See, also, 18 Ann. Cas. 657 and note; 24 L. R. A. (N. S.) 750. The annual report of the American Bar Association for 1927 gives the definition of the term on p. 382 as follows:

"The practice of law is any service, involving legal knowledge, whether of representation, counsel or advocacy, in or out of court, rendered in respect of the rights, duties, obligations, liabilities or business relations of the one requesting the service."

Ballentine's Law Dictionary defines the term on p. 993 in the same language as that quoted above from 2 R. C. L., p. 938, § 4. Construing the above statute, we said in *State v. Chamberlain*, 132 Wash. 520, 232 Pac. 337:

"Respondent urges that the scope of the statute under which the information was drawn is so vast that it is not rash to say that it includes anything and everything that one may do either as an attorney or counsellor at law.

"The above statement is probably correct, and it is exactly what the statute was intended to do. It is also suggested that the statute does not contain any definition of 'practicing law.'

"While we lack an authoritative definition of practicing law, we may say here that, so far as this jurisdiction is concerned, it means doing or practicing that which an attorney or counsellor at law is authorized to do and practice. The statute, § 118, Rem. Comp. Stat. (P. C. § 176), defines an attorney as a person duly admitted to practice law, and authorized to appear in written proceedings in any action or proceeding in any stage thereof. An attorney, other than the one who represents a party in the original proceeding, who appears for and represents him in court, or before a judicial officer in a particular action or pro-

ceeding, is defined as counsel only, and his authority is limited, etc.

"An attorney and counsellor at law must be qualified according to, and admitted to practice under, the provisions of §§ 118 to 139-23 Rem. Comp. Stat. (P. C. § 176 *et seq.*), and must have taken the statutory oath as an attorney and counsellor at law."

Under the authorities, and in reason, we think, it must be held that the services rendered by respondent included acts which fell within the term "practice of law." In many instances, according to his own testimony, he did everything that was to be done in probate proceedings. It is true, his work in such matters was limited to uncontested cases. But that does not change the character of his services. Many, if not most, probate matters are uncontested. Many civil matters before the courts are uncontested, but it could not be said with safety that an unlicensed attorney could appear in all such cases up to the point where a contest appeared. In some instances, respondent gave out oral opinions based on abstracts of title which he had examined. He prepared wills, leases, mortgages, bills of sale, and contracts, upon his own initiative, with no supervision from Mr. Snively, but only upon the latter's general authority so to do.

Respondent contends that the work was simply that of a law clerk, such as is frequently performed even by stenographers. We realize that law clerks have their place in a law office, and we recognize the fact that the nature of their work approaches in a degree that of their employers. The line of demarcation as to where their work begins and where it ends cannot always be drawn with absolute distinction or accuracy. Probably as nearly as it can be fixed, and it is sufficient to say that, it is work of a preparatory nature, such as research, investigation of details, the assemblage of

data and other necessary information, and such other work as will assist the employing attorney in carrying the matter to a completed product, either by his personal examination and approval thereof or by additional effort on his part. The work must be such, however, as loses its separate identity and becomes either the product, or else merged in the product, of the attorney himself. The services performed by the respondent far exceeded this, and in many instances invaded the field which only an attorney may occupy.

Counsel further argues that the services were performed without compensation direct from the client. That is a distinction without a difference. His work had its own personality, and bore the same stamp of skill and ingenuity as though rendered by an attorney. The work was done for compensation, and the fact that the compensation reached him in an indirect way, or that he did not receive all that was charged therefor, is immaterial. To approve a system of practice such as is indicated here, though conceived and conducted in good faith and with no thought of violating the statute, merely paves the way for circumvention of the law.

Much of what the respondent did undoubtedly was of a clerical nature, and such as a law clerk could legally perform. It was not segregated, however, nor separated, either in his pleading or in his proof. We have no way, therefore, of fixing the limits within which he could go, and beyond which he could not. The compensation goes to his claim as an entirety. The burden to segregate, of course, rested upon him, and in its absence we have no way of determining how much, if anything, he should be compensated therefor. From the nature of the contract and the manner in which it was performed, we doubt whether any segregation could now be made.

Counsel still further argues that the agreement did

not, upon its face, contemplate any acts that were illegal. For that matter, the contract on its face did not contemplate any services to be rendered by respondent at all. What his services were to consist of, was a matter resting wholly in the contemplation, or oral understanding, of the parties. What they contemplated or understood is best illustrated by what they did. The testimony of the respondent, which we have quoted above, indicates exactly the working arrangement between the parties.

To recover upon this phase of the contract, respondent must establish (1) that a contract was entered into, (2) that he performed the services contemplated by the contract, and (3) that he has not been paid therefor. In proving the second element, he established the fact that he performed services which he could not lawfully perform.

At this point, we come to a turn in the road, so far as the validity of appellant's defense is concerned. The action, it will be noted, is not contested in its entirety by a client resisting payment for services rendered, but, in so far as the first cause of action is concerned, by the representative of the one who has collected the fees, his representative now insisting that a division thereof cannot be enforced because of the inhibiting statute. While this might have been a good defense if interposed by the client, it is not available to this defendant.

In *White v. Little,* 131 Okla. 132, 268 Pac. 221, one Little, an attorney from a foreign state, migrated to Oklahoma, where he entered the employ of another attorney, one White, upon an agreed compensation of $130 per month; there was also an arrangement for the division of a fee for the prosecution of a particular case. Upon the refusal of White to account for his part of the fee, Little brought suit. The defense was

made that Little had not been licensed to practice law in Oklahoma. The court said:

"Whatever may be the merits of this contention in a controversy between Little and any litigant that he may have represented, as we view it, it is not a remedy available to Mr. White."

In support of its conclusion, that court cited the case of *Martindale v. Shaha*, 51 Okla. 670, 151 Pac. 1019, which arose upon a somewhat similar state of facts. The court therein said:

"Under the Schedule of the Constitution, Shaha was eligible to be admitted to the roll of attorneys in this court, and the fact that he had not been actually admitted might have been a good defense if set up by a client in a suit instituted to recover a fee for services rendered as an attorney, but Deichman & Martindale [defendants] are estopped to make this defense in this action. They cannot be heard to urge this objection to an accounting to Shaha for his part of the fee which they gathered in in his lawsuit, and in which they were associated with him as counsel."

We hold in this case that the statute relied on was not a good defense to the first cause of action. Whether it is a good defense to the second cause of action, will be discussed later in this opinion.

Appellant's second defense was the six-year statute of limitations. This affects only that part of the additional compensation claimed for the years 1920 and 1922, for probate fees unaccounted for. The agreement provided that an annual compensation of $1,600 was to be paid in aliquot weekly payments, and that, at the end of the year, all probate fees paid to Mr. Snively individually were to be computed, and if they exceeded $1,800, respondent was to be entitled to one-third of the amount in excess of the sum of $1,800 as additional compensation. The evidence shows that computations were made from time to time, usually

just after the end of the year, and, based on the results thereof, respondent would be paid his additional compensation. But the evidence also discloses that such computations were not always accurate, and that, as discrepancies became manifest, showing that additional amounts were owing to respondent, they would be paid by Mr. Snively. For instance, on August 7, 1928, Mr. Snively gave the respondent his check for $21.11 "for balance of 1920 probate fees."

Mr. Snively undoubtedly intended to pay respondent all that he owed him, and, of course, intended that the computations should be full and correct. The course of dealing between the parties affords the answer to what we think is the proper interpretation of the clause of the agreement under consideration. It contemplated that, whenever computations, no matter when made, disclosed that fees had been received by Mr. Snively in excess of $1,800 in any one year, the respondent then became entitled to his proportionate share thereof.

This construction does not, however, entirely dispose of the problem concerning the additional compensation for the years 1920 and 1922. As to the latter year, we find in the record Mr. Snively's voucher check dated January 6, 1923, for $175.50, listing on the back thereof the probate cases covered thereby and a notation in respondent's own handwriting that it was for "probate cases in which fees were paid in full during 1922." This has reference only to cases in which fees had been settled in full, and does not include those in which payments might still be owing. Nor did respondent acknowledge thereon his receipt in full for anything that might be subsequently computed and found to be owing him.

The court found that, for the year 1922, there was still owing to respondent the sum of $139.50, and we are satisfied that the evidence supports the finding

of the court in that respect. As to the 1920 fees, however, respondent drew the voucher check himself, endorsing thereon that it satisfied the balance of 1920 probate fees, indicating that the parties had finally checked and determined the total fees that Mr. Snively had collected for that year. We think that he is thereby foreclosed of any further recovery thereon. As to the 1928 and 1930 additional compensation, it was not barred by the statute.

We are not overlooking the fact that some of the work represented by these fees may have been expended on probate matters which respondent could not lawfully perform; nor do we overlook the fact that, upon Mr. Snively's death, the contract between the parties terminated. But considering the short period of time elapsing between Mr. Snively's death and the end of that year, and the likelihood that very little, if any, probate work was done in that short interim, we disregard the matter as of small moment. In any event, the representative of the estate can not invoke respondent's disqualification as to work done at its request for clients of the office.

Finally, we come to the part of the claim covering salary between January 1, 1931, and April 18, 1931. For this item, the court allowed the sum of $314.35. In this, we think the court arrived at an erroneous conclusion. There are two reasons, we think, why respondent can not recover thereon. These may be stated in the alternative. If the respondent performed the work of an attorney in connection with probate matters, a large part of which involved Mr. Snively's own estate, he can not recover therefor, inasmuch as the services were for a client, or litigant, namely, the representative of the estate, who was entitled to raise the question of his disqualification; there was no segregation between those services and the services ren-

dered for former clients of the office. On the other hand, if those matters be eliminated, then clearly respondent was doing no more than what he had been previously doing for many years for a weekly compensation of $33.33. In either event, he can not recover upon his second cause of action.

The judgment will be modified to the extent of eliminating therefrom the item of $67.67 for 1920 probate fees and the item of $314.35 covering the claimed additional compensation for the 1931 period. Appellant will recover costs.

TOLMAN and MAIN, JJ., concur.

BEALS, C. J. (dissenting)—The evidence clearly shows that, in the course of his agreement with Mr. Snively, respondent practiced law within the legal definition effective in this jurisdiction, and that, as stated by the majority, respondent, in so doing, performed services which he could not lawfully perform. This being true, I am clearly of the opinion that respondent cannot recover upon his first cause of action. He was not licensed to practice law in this or any other jurisdiction, and in what he did violated both the letter and the spirit of the statutes of this state.

In deciding that respondent may recover herein for these services, the majority rely upon two cases, cited in the opinion, decided by the supreme court of Oklahoma. The facts in the two cases cited differ greatly from those in the case at bar. In each case, a man not licensed to practice law in Oklahoma joined with a licensed practitioner in contracting to represent a person desiring to bring a lawsuit; the unlicensed party to the contract later suing his associate for a share of the fee which the latter had received. The supreme court of Oklahoma, while assuming that such a party could not recover as against the client, held that he

could recover a share of the compensation which had been paid to his associate; the recovery being allowed, among other reasons, on the basis of money had and received. It does not appear that, in either case, a recovery was allowed based upon services rendered in violation of law. In each case, there were mitigating circumstances; one party having been admitted to practice before the territorial supreme court of Oklahoma, the other party having been regularly admitted to practice before the supreme court of a neighboring state.

The question here presented is entirely different. Respondent seeks to recover for services which he rendered, a considerable portion of such services having been performed in direct violation of the statute. Mr. Snively could lawfully employ respondent as his law clerk, and it is possible that respondent's compensation might have been measured by a percentage of the fees received by Mr. Snively. No such question is, however, before us. Agreeing, as I do, with the majority in holding that the services rendered by respondent were so rendered by him largely in violation of law, I am clearly of the opinion that he cannot recover under his contract with Mr. Snively when such recovery must be based upon the performance of acts which the law forbade respondent to perform; it being impossible to segregate the lawful services which respondent rendered as a law clerk from those which he rendered by way of engaging in the practice of the law.

Respondent's recovery upon his first cause of action being, in my opinion, based upon a contract which respondent performed in an unlawful manner, I am constrained to dissent from the conclusion reached by the majority.