No. 14,072.

PEOPLE EX REL. ATTORNEY GENERAL *v.* JERSIN.
(74 P. [2d] 668)

Decided October 4, 1937. Rehearing denied December 27, 1937.

Mr. Byron G. Rogers, Attorney General, Mr. Walter F. Scherer, Assistant, and Mr. Wilbur F. Denious, Mr. John Zanoni, Mr. Benjamin Griffith, on petition for rehearing, for petitioner.

Mr. Charles D. Bromley, Mr. F. E. Dickerson, for respondent.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

The information and petition filed in this court by the attorney general against Anthony Jersin, charges that he has engaged in the practice of law in that he did on or about the 26th day of October, 1936, draw three warranty deeds in which George Tauckus was the grantor, in two of which Stanley Markels was the grantee and in the third of which Alice Kender was grantee; that on or about the same date he drew a will for the said George Tauckus, a photostatic copy of which

is attached to the petition and information as an exhibit. It is further alleged that the respondent Jersin received compensation from Stanley Markels for the above services in the amount of $13; further that the respondent is not now, nor has he ever been, an attorney at law licensed to practice the profession in the state of Colorado. The prayer of the petitioner is that respondent Jersin be ruled to show cause "why he should not be punished for contempt for engaging in the practice of law in the state of Colorado."

In his answer the respondent admits the drawing of the deeds and the will, but alleges that he made no charge for his services. He further alleges that at the time of performing the acts charged, he was secretary of the Western Slavonic Association, a fraternal insurance corporation, that he was an intimate friend of the deceased, George Tauckus, the grantor mentioned in said deeds and the author of the will mentioned in the information and petition, that for some time prior to the execution of said instruments the said Tauckus was sick and ailing and that respondent visited him at his home and at the hospital; that shortly prior to the death of Tauckus he requested respondent to draw said instruments and that as a matter of friendship and as a personal favor to the said Tauckus he complied with the request without any thought of compensation for the same. Respondent further alleges that a few days thereafter Stanley Markels, grantee in two of the deeds, called at respondent's office and inquired if there was any charge for the services of respondent and being informed that there was none left the sum of eight dollars with respondent, stating that it was a gift to him for his time and trouble, that he intended to give the respondent five dollars more, and shortly thereafter he did present respondent with the sum of five dollars for which respondent gave him the receipt attached as an exhibit to the information and petition, which receipt was as follows: "Denver, Colorado, October 31, 1936. Received from

Stanley Markels $13 Thirteen and no/100 Dollars. Anthony Jersin.'' The respondent further alleges that he was in ignorance of the fact, if it was a fact, that the drawing of said instruments was a violation of law; that he is not now, and never has, engaged in the practice of law and would not have drawn the instruments in question had he known such acts to be a violation of the law.

There is no testimony in the record, and the case is before us on the charges admitted and the allegations of the respondent in his answer concerning the circumstances and conditions under which the acts charged as a contempt of court were done. Such allegations as to circumstances and conditions are not controverted and we assume their truth.

The attorney general in his brief contends that the guilt or innocence of the respondent depends upon the answer to the following questions: (1) Does the drawing of deeds and wills constitute the practice of law? (2) If so, can one not licensed by this court to practice law draw such papers? Stated more formally his contentions are: (1) Drawing deeds and wills is practicing law. (2) The respondent drew three deeds and a will. (3) Therefore the respondent practiced law. If the premises be granted the conclusion is inescapable. The second the respondent admits. If there is an error in the conclusion it must have its origin in the major premise. Stated as broadly as it is we think the major premise is not sound. The vice it contains was mentioned, if not directly pointed out, in the case of *People ex rel. v. Denver Banks,* 99 Colo. 50, 59 P. (2d) 468. In that opinion it is said: ''We think the drawing of wills, *as a practice,* is the practice of law.'' (Italics mine.) It does not appear that respondent made a practice of drawing deeds or wills. He drew three deeds and a will at one time for one person who was a friend, and apparently a fellow countryman. It is not charged that he ever drew others or holds himself out as willing or

competent to do so. The matter of his receiving compensation we do not consider, for counsel for the people admit that making a charge or receiving pay, is not determinative of the issue of whether he was or was not practicing law. The major premise contains this further vice, the assumption that all acts done by a lawyer and constituting a practice of his profession, if performed by a layman, constitute a practice of law by the latter. There is a twilight zone, and of necessity must be, where the question of whether acts done are a contempt of the court as involving a practice of law are to be judged by the surrounding circumstances and not by the inherent character of the acts themselves. Nor should it be overlooked that punishments for contempt, other than for violation of statutes, are for the protection of the court and its authority, rather than for the protection of those who suffer or may suffer incidental injury by reason of the contemptuous conduct. *People ex rel. v. Wicks,* 101 Colo. 397, 74 P. (2d) 665.

 The law against the unauthorized practice of medicine clearly is for the protection of those likely to be injured by those engaging in such practice. This is a proper legislative declaration of public policy. We doubt not that it likewise would be a proper exercise of the legislative function to declare that laymen shall not write deeds and wills, for the protection of those likely to be injured by having their deeds and wills improperly drawn. In the absence of a statute so providing, it is no more the function of the court to punish a layman for contempt for drawing deeds and wills in order to protect others against the results of his unskillful action, than it would be to punish a layman as being in contempt, for administering a physic which fails to effect a cure. The argument invoking our action to promote the objective of saving the people from their own folly, no statutory violation being involved, is not one which requires consideration in a contempt proceeding. A good definition of contempt is found in 6 R. C. L. 488, where it is

said: "Contempt of court has been defined as a despising of the authority, justice, or dignity of the court; and he is guilty of contempt whose conduct is such as tends to bring the authority and administration of the law into disrespect or disregard, or to interfere with or prejudice parties litigant or their witnesses during the litigations."

It will be noted that it is the *administration* of the law, a function residing in the courts, rather than the operation of the law, that is sought to be safeguarded by punishing for contemptuous conduct.

The requirements constituting valid deeds and wills are clearly within the domain of public policy, the domain exclusively of the legislative branch of government, and a statutory form of deed has been adopted. C. L. 1921, §4879, '35 C. S. A., c. 40, §11. If the character of the act were the test, if its effect on a citizen were controlling, the lawyer as well as the layman similarly offending would be guilty of contempt in drawing a will, for example, which was not valid or failed to accomplish that which the testator intended when presented in court.

▉ It does not follow from the foregoing that the court has no power to punish a layman who assumes to exercise the function and privileges of a duly licensed lawyer. The court is intrusted with the duty of passing upon the qualifications and fitness of men to practice as attorneys at law, and is empowered to license those who apply and are found to possess the necessary qualifications, and to deny a license to those who are found wanting in this respect. One who would practice law owes a duty to the court to apply for the privilege and to submit evidence of his fitness and qualifications. If he makes a *practice* or *business* of exercising the privileges conferred upon attorneys by license without the required application and without due authorization by the court, such conduct is evidence of his disregard of, and contempt for, the court's authority to administer the law and admit persons to the practice of the profession.

In the consideration of such cases, however, it should

be remembered that the exigencies of business, considered in its broad sense as the efforts of men by varied and diverse methods of dealing with each other to improve their individual economic conditions and satisfy their desires, brings about the necessity for lawyers. Business is not the outgrowth of the practice of law. The practice of law is the outgrowth of business. The law for the protection of men against the unauthorized practice of medicine recognizes specifically the right of a layman to act in emergencies. It does this in the face of the fact that wrong treatment or no treatment may result in the most serious consequences and possibly in injury that is irreparable. In the nature of things property rights are of secondary consideration as compared with health and personal welfare. A condition much less emergent than one affecting his physical well-being may cause a man to seek counsel in matters relating merely to his economic welfare from a person not thoroughly skilled or competent, because skilled advice is not available or because he has not the money to pay for the services that such skill demands. Such situations are real emergencies to many men and they meet them by having a real estate man or cashier in the local bank, unskilled in the law as they often are, draw ·a lease or bill of sale or other document for a nominal sum rather than make a long trip to the county seat to employ a lawyer to fill in the same blank for a higher fee. Until licensed attorneys are available to look after simple business transactions such as the drawing of documents which men of ordinary business training can prepare, if not with skill at least to the satisfaction of those directly involved, courts need not, and should not, in the absence of explicit statute, be *too ready* to punish for contempt those who take care of the exigencies of business so it may move forward to its designed objectives; nor should too restrictive rules, general in their application, be fixed regardless of the circumstances to which they may apply. We cannot ignore what men in general

know, that there are many towns in this state where considerable business is carried on forty to fifty miles from a lawyer's office. If a million dollar company be not required to send a lawyer to such a town to write a complicated contract, as for example, one insuring Smith's barn and hay for $7,000, but may intrust its preparation to the local real estate man, surely Smith should not be required to go to the county seat to engage a lawyer to write a bill of sale on a blank form in a transaction involving the sale of a twenty dollar calf to his neighbor Jones. What constitutes the emergencies and the exigencies of business in large measure always have depended, and always will depend, on the custom and practice of those who carry on the country's business, and within reasonable limits such customs and practices should, indeed must, be recognized.

We think that the alleged and admitted acts before us, under the circumstances disclosed, do not show the doing as a practice or business, of acts which when performed by a lawyer constitute practicing his profession. The respondent disclaims any intention of practicing law and alleges that he was not advised that his acts constituted a practice of law which might be construed as a contempt of court. An express intention to bring the court into contempt need not always be present in order to constitute a contempt, but its absence in this case we think is proper as one of the circumstances to be considered in determining, even if the conduct might be construed as constituting contempt, whether any punishment should be imposed. In *People v. Ellis*, 44 Colo. 176, 96 Pac. 783, the matter of an attorney unlicensed in Colorado but licensed in another state accepting employment and appearing in a court of record before securing his license in this state in direct contravention of a statute making such an act contempt was before the court. Without detailing the circumstances, fully set forth in the opinion, we think the rule there stated and the reasons therefor may well be applied

here. In that case the court said: "The statements in the answer not having been controverted, we shall accept them as truthful. Although the respondent has violated the statute, we think he has not intentionally done so, and under the circumstances disclosed by the answer, our duty does not require us to punish him, and we shall discharge him."

The rule to show cause is discharged.

MR. CHIEF JUSTICE BURKE concurs in the conclusion only.

MR. JUSTICE BOUCK and MR. JUSTICE BAKKE not participating.