[No. 31633. *En Banc.* December 19, 1952.]

WASHINGTON STATE BAR ASSOCIATION, *Appellant,* v. WASH-
INGTON ASSOCIATION OF REALTORS *et al., Respondents.*[1]

*F. L. Stotler* and *A. V. Stoneman,* for appellant.

*William H. Botzer* (of *Peyser, Cartano, Botzer & Chap-
man*) and *Harry L. Olson* (of *Olson & Palmer*), for re-
spondents.

[1]Reported in 251 P. (2d) 619.

Olson, J.—The question presented by plaintiff's appeal from a decree dismissing its action, is whether or not a licensed real-estate broker should be restrained from doing certain work of a legal nature.

By rulings of the trial court, which are not challenged, the scope of this case has been narrowed, since its inception as an action against all licensed real-estate brokers in the state, until it now involves but one defendant, C. K. Worrell. He is a licensed real-estate broker engaged in business in Yakima. Plaintiff alleged that he had prepared seven legal instruments, two real-estate purchase contracts and five deeds. He denies that he prepared the contracts in question, but admits that he has filled the blanks in legal forms to make such contracts on other occasions. He does not question the finding of the trial court that four deeds in evidence were prepared under his supervision and direction, by the completion of printed forms of statutory warranty deed supplied to him by a title insurance company. Each legal instrument drawn by defendant pertained to a transaction negotiated through his office.

One of the deeds, known as the Voeller-Newman deed, is of primary concern to us. This language appears in it, following the property description:

"Subject: To a $4,000 mortgage held by Public Service Life, Health and Accident Company.
"A mortgage of $850.00."

The trial court found, and defendant now concedes, that he was doing work of a legal nature when he prepared these deeds. But he contends that, because he received no compensation for their preparation beyond his usual broker's commission for the real-estate transactions, he has not violated the statute (RCW 2.48.190 [cf. Rem. Rev. Stat., § 139-4]) proscribing the doing of "work of a legal nature for compensation" by one not admitted to practice law in this state, and that his activities are not within the later statute (RCW 2.48.180 [cf. Rem. Rev. Stat. (Sup.), § 138-14], a section of the integrated bar act) providing a penalty for the unlawful practice of law.

■ The success of this action does not depend upon proof of defendant's violation of any statute. It is not a criminal prosecution. It is an action in equity. The prayer is not that we find that defendant is in contempt and impose a penalty upon him, but is that he be restrained from doing work of a legal nature in the future. Such relief does not require legislative sanction, and we need not discuss or decide the application or present effectiveness of either statute, or whether the second statute cited repealed the first. If we are to grant an injunction in this case, we must do so by the exercise of our inherent judicial power.

Defendant does not question, and no citation of authority is necessary to establish, the possession of this power by this court. Its possession imposes a duty upon the court to protect the public, by a proper decree, from the activities of those who, because of lack of professional skill, may cause injury, whether they be members of the bar or persons never qualified for or admitted to the bar.

■ The probability of injurious consequences from the acts of the unskilled, is shown by the constant stream of litigation arising from this source. These consequences are not made less probable, nor are their results less severe, because the unskilled are not paid for their services. The same harm can be caused whether the work be done gratuitously or for a fee. The nature and character of the service rendered, rather than the fact of compensation for it, should govern its classification and relation to the public interest.

A legislative act which purports to permit gratuitous work of a legal nature by the unskilled or unqualified, can impose no restriction upon the power of the court to grant an injunction, if the court determines that the continuation of such work is, in fact, against the public interest. Such an act might well be viewed as a statement of the minimum requirement for an action at law for relief against the proscribed activities. It is not a maximum requirement that divests the court of jurisdiction or precludes its action in an equitable proceeding. If the legal relief based upon such a statute is inadequate to protect the public, the aid of a court

of equity may be sought, and its powers should be invoked for that purpose. When an action such as this is brought on behalf of the public, it is not one in which the right of an individual plaintiff is concerned. Consequently, no pecuniary or property interest of the plaintiff need be involved to justify the entry of a decree restraining the defendant from continuing improper actions.

This power is one which the court exercises with reluctance and only when its duty to do so is clear, in order that the public interest be protected. Each case must rest upon its own facts.

■ Considering particularly the Voeller-Newman deed in evidence in this case, the agreement of the parties and their liability regarding the mortgages cannot be told from the face of the instrument. The grantees testified that they did not know the legal consequences of the document. Defendant, in the preparation of this deed, failed to recognize the dangers inherent in the situation or, if he recognized them, failed to provide against them by accurate legal draftsmanship. The fact that the form of deed he used may have been proper or approved by statute or counsel, is not a justification for defendant's action. Any legal form must be adapted skillfully to the transaction for which it is used, so that it expresses the agreement of the parties and defines their rights and obligations. Doing this is work of a legal nature, and, when it is done by one unqualified, we not only cannot condone its continuance but we must act to prevent it, whether or not it is done for compensation.

Defendant relies, and the trial court based its ruling, upon the limitation which this court placed in the decree in *Paul v. Stanley*, 168 Wash. 371, 12 P. (2d) 401 (1932), discussed in 8 Wash. L. Rev. 33. The defendant in that case was restrained from doing work of a legal nature only if that work was done for compensation. The court construed, and placed its reliance upon, the statute (RCW 2.48.190 [*cf.* Rem. Rev. Stat., § 139-4]), and not upon the exercise of its inherent power. However, for the reasons expressed in the case at bar, we now depart from that decision, and, in so far as it is inconsistent with this opinion, it is overruled.

Many cases from other jurisdictions, bearing upon the problem presented by this case, have been cited to us, and we have found many others in our research. There is a division in these authorities, and we decline to refer to or rely upon any of them, because the problem is one which each court must resolve as it deems proper.

There are many propositions inherent in a case of this nature which influence its decision. We feel obliged to mention them, but we do not need to discuss them. Among these are: The representation of qualification and competence to do work of a legal nature and to advise.upon that subject, which is implicit in the preparation of any legal document by the selection and completion of a blank form; the ethical problems arising from the fact that the legal draftsman acted for both parties to the transaction, and the fact that there is no simple legal instrument which necessarily can be differentiated from a complex one, so that its preparation by an unqualified person can be justified.

Upon the issues as they are presented to us in this case, we need not decide what activities are or are not included in the term, "practice of law," and it is not necessary that we attempt to define that term. Nor is there any issue here regarding the right of a lay person to prepare legal documents incident to transactions to which that person is a party, such as the preparation of earnest-money receipts by real-estate brokers on standard forms or otherwise.

 Because of our decision not to adhere to the limitation imposed by *Paul v. Stanley, supra,* and the narrowed issues and diminished scope of the case at bar, and our reluctance to exercise our inherent power except when necessary, and then only with prudence, we are of the opinion that the relief granted in this case must be quite restricted. It shall restrain the defendant from doing the specific kind of work of a legal nature evidenced by the preparation of the Voeller-Newman deed. We intend that the nature of this decree in this regard shall not necessarily define the terms of any decrees to be entered in any cases of this type which may arise in the future. The decree shall

further provide that it shall be effective whether or not the defendant receives any compensation for such work.

The judgment is reversed, and the cause remanded to the trial court, with instructions to enter a decree consistent with this opinion.

SCHWELLENBACH, C. J., MALLERY, and WEAVER, JJ., concur.

HILL, HAMLEY, and FINLEY, JJ., concur in the result.

DONWORTH, J. (concurring in the result)—I am in accord with the result of the majority opinion so far as it goes, but I feel that it does not adequately protect the public from the unauthorized practice of law by respondent.

The trial court found that respondent prepared for others two types of legal instruments:

(1) The Voeller-Newman deed (in which he attempted to define certain legal rights in connection with mortgages).

(2) Three other deeds (in which he merely filled in the names of the parties, the legal description of the property, etc., in printed forms).

In addition, respondent testified that he had prepared various contracts for the conditional sale and purchase of real estate by filling in blanks in printed forms.

The majority opinion enjoins only the specific type of work of a legal nature covered by the first item mentioned above and tacitly approves the respondent's activities in the preparation of the other two types of instruments.

I am of the opinion that respondent and other unlicensed persons should not be permitted to draw *any* deeds and/or *any* real-estate contracts for others. In other words, I believe that the court should exercise its inherent power to confine conveyancing and the preparation of contracts for others to those persons who are licensed to practice law in this state.

While the acts of respondent in this case may seem rather trivial compared to those of the notary public in *Paul v. Stanley*, 168 Wash. 371, 12 P. (2d) 401, the principles involved in this case are of such far-reaching importance to the public that, at the risk of prolixity, I deem it proper to

discuss in some detail the issues presented and my reasons for the conclusions which I have reached.

This action was instituted by the Washington state bar association on behalf of all licensed attorneys at law in the state of Washington. It was originally directed against every licensed real-estate broker in the state. The purpose of the suit was to enjoin all such brokers from engaging in and carrying on the unlawful practice of law or doing work of a legal nature.

As a result of certain preliminary court orders, not here challenged, the broad scope of the initial proceeding has been greatly reduced. In substance, it is now a suit against C. K. Worrell, a licensed real-estate broker of Yakima, Washington, to enjoin him from engaging in and carrying on the unlawful practice of law and from doing work of a legal nature for others.

The amended complaint specifies seven instances in which Worrell is alleged to have prepared, or caused to be prepared, legal instruments which were used in furtherance of real-estate transactions for which he received compensation. Respondent denied, on information and belief, that he prepared the documents; alleged that all compensation received by him was solely for his services as a real-estate broker; alleged that, if any instruments were prepared by him, they were prepared by filling in standard blank legal forms; and alleged that all acts performed by him were performed as a duly licensed real-estate broker.

At the time of the trial of this case, Worrell had been engaged in the real-estate business in Yakima for ten years— the last four of these as a licensed broker. He was then a member of the Washington Association of Realtors, which is affiliated with the National Association of Real Estate Boards. In the conduct of his business, he employed salesmen and stenographers, but personally supervised the closing of all transactions negotiated through his office.

Evidence was introduced regarding the preparation of each of the seven legal instruments referred to in the amended complaint. Five of these instruments were war-

ranty deeds, and the other two were real-estate contracts. Each of these instruments was prepared and executed in furtherance of a particular real-estate transaction negotiated by defendant. When testifying as an adverse witness, he was unable to remember whether any of the seven instruments was prepared in his office.

The trial court, however, found that respondent prepared four of the warranty deeds. My review of the record leads me to the same conclusion. On this appeal, it is conceded that the four warranty deeds in question were prepared under his supervision and direction.

Each of these instruments is a statutory-form warranty deed prepared on a printed form distributed by one or the other of two title companies. One of these deeds (which is discussed later herein) contains an ambiguous reference to either one or two mortgages. None of the other instruments contains any special provisions. All four deeds contain acknowledgments taken by respondent and were filed for record by him.

Each of these deeds was prepared and executed for the purpose of consummating a sale of real estate negotiated by respondent. In three of the four instances, he had entered into an exclusive listing agreement with the seller. Under these listing agreements, the sellers agreed to pay the broker a commission of five per cent of the sale price of the property, if the broker made a sale of the property or found a purchaser who was ready, able and willing to pay the purchase price on the specified terms. As to the fourth instance in question, the sale was negotiated pursuant to a multiple, listing arrangement involving other Yakima real-estate agencies.

In all four instances, the sellers and purchasers had executed earnest money receipts. These had been prepared in respondent's office on his own printed forms, the original draft of which had been prepared by an attorney employed by respondent. The name of C. K. Worrell Realty Co. is printed on the form as one of the parties to the earnest money receipt, and, in each instance, one of respondent's

salesmen signed the instrument on behalf of that agency. There is also included at the bottom of the instrument a commission agreement in the usual form, signed, in each instance, by the sellers of the property.

It is clear from the evidence, as the trial court found, that respondent made no separate charge for the preparation of the deeds or other documents in connection with the individual transactions. His compensation in each such transaction consisted of the usual five per cent commission based on the sales price, which was charged by all real-estate brokers in the community.

The customary procedure followed by respondent in closing real-estate sales which he had negotiated was explained by him in his testimony in his own behalf as follows:

"A. As soon as the earnest money agreement is brought in signed by both parties, and the earnest money deposited on that transaction, if the parties are in my office at that time, I ask them pointedly who their attorney is and who they want to represent them. If they are not there, I try to contact them by 'phone and other methods, to find out who their lawyers are. In some cases both the buyer and the seller have representation. In some cases the buyer will say, 'Well, anybody is satisfactory with me,' or, 'You can do it,' and in some cases the seller asks me, 'Who pays the costs of the attorney's fees?' In every case I state that the seller pays the cost. Then the seller will ask me what the prices are for closing the transaction. I invariably tell him I do not know. His attorney might do it cheaper for him than he would do it for me. Therefore, if he has an attorney that he ordinarily patronizes, I suggest that he have him draw the papers. If he says he doesn't have an attorney, I ask him if he wants one or who he wants. If he leaves that to me, I will be frank and send them to my counsel if he says he wants an attorney. If he says, 'Why don't you draw the papers,' then I draw the papers. . . . I would like to qualify that slightly and say I only draw papers where it is necessary to make a deed and to copy the legal description from the title report into the deed with the names of the grantors and the grantees. I do not take any complicated cases whatever where there are contracts on contract or anything of that nature. I do not care to stick my neck out, to be plain about it, on anything like that, and I simply tell them they have to have an attorney. I have some of those

cases pending, and if you want further proof, I will tell you who is handling them and what the cases are. . . . Q. Supposing the closing of the transaction requires the giving and execution of a mortgage? A. I never have drawn a mortgage at all. No, I have never drawn a mortgage. . . . The Court: I don't believe the witness has stated specifically to contracts. Did you understand that Mr. Olson was asking you specifically now also about contracts? A. If it is a simple contract and an agreement to pay so much a month, and we have these forms prepared for us which states the selling price, the amount of money paid down, and the payment of so much a month is all practically that is necessary to put in there, I have drawn contracts. Q. Do I understand that your preparation of those documents has at all times been limited to the filling in of printed forms furnished by the Title Company? A. That is right; it is all in printed form. I get my supply of those from the corner office, the Title Guaranty Company."

It was neither alleged nor proved that respondent represented himself as qualified to do work of a legal nature. Likewise, it was neither alleged nor proved that he represented himself as an attorney or counselor at law, or held himself out as entitled to practice law. Except for respondent's statement as to his customary procedure, most of which is quoted above, the evidence was strictly limited to the seven transactions specified in the amended complaint. There is accordingly nothing in the record to indicate that respondent ever prepared legal instruments not needed in connection with his own real-estate transactions.

On the facts, as summarized above, the trial court entered a judgment of dismissal. The court, indicating its views in an extensive memorandum opinion, held that the provisions of the Laws of 1921, chapter 126, § 4, p. 409 (Rem. Rev. Stat., § 139-4; cf. RCW 2.48.190), relating to the doing of work of a legal nature for compensation, had not been repealed by the Laws of 1933, chapter 94, § 14, p. 401 (Rem. Rev. Stat. (Sup.), § 138-14; cf. RCW 2.48.180); that respondent had been doing work of a legal nature, but not for compensation, as that term is used in RCW 2.48.190; and that, in view of the continued effectiveness of that statute, respond-

ent had not been engaged in the practice of law within the meaning of RCW 2.48.180.

The bar association has appealed and here challenges each of the rulings of the trial court referred to above. Appellant also advances the further contention that, whatever construction is placed upon these statutes, this court should, in the exercise of its inherent judicial power, enjoin respondent from continuing the questioned activities.

Respondent concedes that, in preparing the four warranty deeds referred to above, he was doing "work of a legal nature," within the meaning of RCW 2.48.190. He denies, however, that he did this work "for compensation," as those words are used in the statute. The trial court sustained respondent's position in this respect.

It is not necessary to determine whether RCW 2.48.190 relating to the doing of work of a legal nature for compensation has been repealed by implication by RCW 2.48.180. Respondent is not being prosecuted for violating either statute. This court has inherent power to enjoin the unauthorized practice of law for the protection of the public in a proper case irrespective of either statute. This is not a legislative problem any more than the discipline and disbarment of licensed attorneys or the admission of applicants to practice law is a legislative matter. The unlawful practice of law by laymen is a judicial matter addressed solely to the courts.

We held in *In re McCallum*, 186 Wash. 312, 57 P. (2d) 1259, that this court has such inherent power. In that case, the acts of the unauthorized practitioner were found not to warrant punishment for contempt, and the proceeding was dismissed without prejudice to the right to pursue any other remedy such as injunction or prosecution. This court, in discussing the remedies available in such a situation, said:

"Whether or not a statute for such purposes was necessary, this court, which has jurisdiction in the matter of the admission and disciplining of attorneys, clearly has the power to punish as for contempt anyone who, without authority, practices law or holds himself out as entitled to do so. Also, the court has the power by injunction proceed-

ings to stop such practice. Thus, three remedies are provided: (1) Prosecution for a misdemeanor by the prosecuting attorneys of the state, which carries the right of trial by jury; (2) injunction; and (3) punishment as for contempt.

"The existence of power to punish as for contempt, a necessary but also dangerous power, does not mean that it must be exercised in the first instance where other remedies are available. The matter must be approached and considered judicially and decided according to the facts in each case.

"Fully appreciating the evil sought to be remedied by the statutes against the unauthorized practice of law and the desirability of enforcing the statutes to that end, it, nevertheless, is not an idle thing in this kind of a case to resort to the drastic remedy of contempt proceedings, thus cutting off the right to a jury trial and at the same time ignoring the remedy by injunction wherein the defendant may be heard in entering the judgment, the terms of which may be properly enforced thereafter by proceedings in contempt, if necessary.

"It must be kept in mind that there is nothing inherently wrong or contumacious in the business transactions upon which these charges are based."

See, also, *In re Bruen*, 102 Wash. 472, 172 Pac. 1152; *In re Levy*, 23 Wn. (2d) 607, 161 P. (2d) 651; and *State ex rel. Laughlin v. Washington State Bar Ass'n*, 26 Wn. (2d) 914, 176 P. (2d) 301.

I regard it as immaterial whether respondent prepared these deeds with or without compensation actually or inferentially received therefor. *People ex rel. Attorney General v. Jersin*, 101 Colo. 406, 74 P. (2d) 668; *Grievance Committee of State Bar of Texas, 21st Cong. Dist. v. Dean*, 190 S. W. (2d) (Tex. Civ. App.) 126. The danger to the public inherent in such a situation is just as great whether the deeds were drafted for compensation or not.

In so far as we held in *Paul v. Stanley*, 168 Wash. 371, 12 P. (2d) 401, that the performance of work of a legal nature by a layman without compensation would not be enjoined, I agree with the majority that the *Paul* case should be overruled. The consideration given to the problem in that case

was limited solely to the statute (RCW 2.48.190); the inherent power of the court to enjoin such acts was not discussed in the decision.

In the *Paul* case, we held that a notary public and licensed realtor should be enjoined from drawing "simple deeds, simple mortgages, simple contracts and similar simple instruments" for compensation. In pointing out that such activity on the part of a layman deprived the public of the protection which was afforded by RCW 2.48.190 (then the only statute on the subject), we said:

"The evil from which Rem. Comp. Stat., § 139-4, is designed to protect the public is not done away with by permitting the respondent to draw simple instruments which either define, set forth, limit, terminate, specify, claim or grant legal rights.

"In the case of *People v. Title Guarantee & Trust Co.*, 227 N. Y. 366, 125 N. E. 666, Judge Pound, in a concurring opinion, said:

" 'I am unable to rest any satisfactory test on the distinction between simple and complex instruments. The most complex are simple to the skilled and the simplest often trouble the inexperienced.'

"In view of the proof that respondent was giving legal advice, the trial court erred in holding that the decree should be without prejudice to respondent's right to draw simple deeds, simple mortgages, simple contracts and similar simple instruments. That portion of the decree from which appellants have appealed was erroneous, and should not have been embodied therein."

The wisdom of Judge Pound's observation, above quoted, is illustrated in the case at bar. The warranty deed from Voeller and wife to Louis H. Newman, which was prepared by respondent, contained this recital following the property description:

"Subject: To a $4,000 mortgage held by Public Service Life, Health and Accident Company.
"A mortgage of $850.00."

It is a matter of conjecture whether there was one mortgage against the property (which was originally $4,000 but had been reduced to $850) or whether there were two mortgages (one for $4,000 and another for $850).

The element of serious danger in a transaction of this kind is the possibility of a grantee's becoming liable (without any such intention on his part) for the payment of the mortgage. It is apparent from the testimony of Mr. and Mrs. Newman that they had no conception as to whether they were acquiring the property "subject to" the mortgage (or mortgages) or whether they were "assuming" it (or them). The earnest money receipt indicates that they were to *assume* two mortgages. The deed (which finally fixes the obligations of the parties) recites the conveyance is *subject to* the mortgage or mortgages. Apparently, the Newmans had not been advised of any legal distinction between these two methods of acquiring the property.

This transaction well illustrates the detrimental effect upon the public of permitting realtors to fill in blanks in printed legal forms on the theory that they are "simple contracts." From a practical standpoint, there is no such thing as a simple legal form in the hands of a layman. The ordinary business man believes that, unless he signs a document, he cannot incur a legal liability. He does not know that, if he accepts delivery of a deed which recites that the grantee assumes a certain mortgage, he has thereby (without the scratch of a pen) agreed to pay the mortgage. He is also ignorant of the possibility of his later being compelled to pay a deficiency judgment in case of foreclosure of the mortgage and the failure of the land to bring enough at the sheriff's sale to pay the balance due on the mortgage. During the recent depression a number of business men, who had failed to avail themselves of competent legal advice, learned this distinction "the hard way."

In this case, respondent's attempt to designate the nature of the Newmans' liability with respect to the existing mortgage or mortgages may not have harmed them but they were exposed to a potential risk of which they (and undoubtedly respondent also) were entirely unaware. Laymen should not be permitted to toy with legal dynamite in this manner on the theory that the Newman transaction was a trivial matter. I agree with the majority that this court should enjoin such practice of the law or performance of work of a

legal nature by a layman as this record shows in regard to the Voeller-Newman transaction. If respondent has the right to draft a deed involving the assumption of a $4,000 mortgage, he may do likewise in a transaction involving a $100,000 mortgage or a larger mortgage.

Furthermore, respondent, while acting as agent for the seller, attempted also to act for the purchaser in defining the legal liability of the latter with regard to the mortgage or mortgages. Respondent's compensation consisted of a commission or, as he designated it, a "sales service" charge paid by the seller. In attempting to fix the legal liability of the purchaser and in determining whether or not the purchaser should indemnify the seller (respondent's principal to whom he looked for his compensation) against the mortgage or mortgages until it or they matured, respondent was assuming to practice law. Even a licensed member of the bar under these circumstances could not act for both parties without a full explanation to them of their potential adverse interests and without obtaining their mutual consent. Obviously, this court cannot permit an unlicensed layman who is entirely unaware of the legal ethics involved to attempt to fix the obligations of both parties *inter se* while being employed and paid by only one of them.

With reference to the other three deeds prepared by respondent under the circumstances above described (excluding from consideration the Voeller-Newman deed which I have discussed at some length), the question remains whether the preparation of these instruments by filling blank spaces in a printed form obtained from a title insurance company to show the names of the parties and the description of the property conveyed constituted the unlawful practice of law. This is where I differ with the majority opinion because I think it does not go far enough.

The authorities on this question are divided. The decisions bearing upon it (rendered prior to 1937) are found in Brand, Unauthorized Practice Decisions, pp. 785-788. See, also, 94 A. L. R. 359, 111 A. L. R. 1, and 151 A. L. R. 781.

My consideration of these decisions has lead me to the

conclusion that the reasoning of the following cases is sound: *In re Gore,* 58 Ohio App. 79, 15 N. E. (2d) 968; *Clark v. Reardon,* 231 Mo. App. 666, 104 S. W. (2d) 407; *People ex rel. Illinois State Bar Ass'n v. Schafer,* 404 Ill. 45, 87 N. E. (2d) 773.

The first case above cited presented the same state of facts as that involved in the case at bar. The syllabus prepared by the court reads:

"The selecting, by a real estate broker, of the appropriate form of contract blank for others or the filling out of such blank for others, in the furtherance of a real estate transaction, constitutes the practice of law, and such person must be duly licensed to practice law to legally perform such acts."

The trial court in its memorandum opinion, after citing authorities from other jurisdictions holding to the contrary, to wit, that a licensed real-estate broker may prepare such instruments in connection with transactions handled by him, correctly stated:

"This court cannot agree with the holdings of those courts in cases cited by counsel for the defendant which seek to draw a distinction between simple and complicated legal instruments. A deed or a contract can only be considered a simple instrument by one who is fully cognizant of basic legal principles; of the law of marriage and divorce; of probate; heirship; landlord and tenant; vendor and purchaser; and many other branches of the law and of their interrelation."

I agree with the majority that there is no such thing as a simple legal instrument in the hands of a layman. A layman is not competent to determine whether a quitclaim deed, a warranty deed or a bargain and sale deed should be used in a particular case. Often, easements are involved arising either from specific grants or by prescription. These as well as other encumbrances must be taken into consideration by the scrivener. Conveyancing is a highly technical art which, in my opinion, should be engaged in only by licensed attorneys.

A substantial number of cases have come before this court where the principal cause of the litigation was the incompe-

tent preparation of a legal instrument by a layman acting on behalf of another layman. Lawsuits of this character can be avoided by limiting such activities to those licensed to engage in the practice of law.

Since the argument in this case, the parties have each called our attention to a recent decision bearing upon the question before us. Respondent cites *Hulse v. Criger,* 247 S. W. (2d) (Mo.) 855, and appellant cites *In re Baker,* 8 N. J. 321, 85 A. (2d) 505. These cases will be reviewed at some length since they are the most recent decisions on this subject.

*In re Baker, supra,* was decided by the supreme court of New Jersey in December, 1951. It involved the attempt of two laymen to draw a will, naming themselves as legatees, with the intent to fraudulently obtain possession of the testator's property. The laymen were cited before the supreme court to show cause why they should not be adjudged guilty of contempt of court. While the misconduct of the two laymen was extremely reprehensible and the facts of that case differ widely from the case at bar, several principles of law applicable here were discussed and decided:

1. The existence of a statute making it a misdemeanor to practice law without a license does not interfere with the court's inherent power to punish such conduct as contemptuous.

2. A single act may constitute the unlawful practice of law.

3. Receipt of compensation is not a necessary element of unlawful practice (citing, *inter alia, Ferris v. Snively,* 172 Wash. 167, 19 P. (2d) 942, 90 A. L. R. 278).

4. The fact that the acts complained of were committed outside of court is immaterial.

The two laymen were adjudged in contempt and fined two hundred fifty dollars each.

In the *Hulse* case, *supra* (decided in April, 1952), the supreme court of Missouri sitting *en banc* had under consideration facts somewhat similar to the present case except that

the broker made a separate charge for preparing documents instead of including all charges under the one head of "sales service" and in a few instances did so while not acting as broker. Upon a motion for judgment on the pleadings the court considered admissions in the answer that respondent was a licensed real-estate broker; that in the course of his business he had prepared for persons other than himself many instruments affecting the title to real estate, including deeds of conveyance, and that he had charged a nominal sum for preparation of such instruments (being sufficient to defray the cost of the printed forms and the services of clerical help). He admitted that he had in most instances charged and received a commission for his services as a real-estate broker in the same transactions. The Missouri court concluded as follows:

"We reach the following conclusions:

"First: A real estate broker, in transactions in which he is acting as a broker, may use a standardized contract in a form prepared or approved by counsel and may complete it by filling in the blank spaces to show the parties and the transaction which he has procured.

"Second: A real estate broker, in transactions in which he is acting as a broker, may use standardized forms of warranty deeds, quit claim deeds, trust deeds, notes, chattel mortgages and short term leases, prepared or approved by counsel and may complete them by filling in the blank spaces to show the parties, descriptions and terms necessary to close the transaction he has procured.

"Third: A real estate broker may not make a separate charge for completing any standardized forms, and he may not prepare such forms for persons in transactions, in which he is not acting as a broker, unless he is himself one of the parties to the contract or instrument.

"Fourth: The required approval by counsel of standardized forms to be used in real estate transactions properly may be made either by lawyers selected by real estate brokers individually or selected by real estate boards of which they are members.

"Fifth: Even in transactions in which he is acting as a broker, a real estate broker may not give advice or opinions as to the legal rights of the parties, as to the legal effect of instruments to accomplish specific purposes or as to the va-

lidity of title to real estate; and he may not prepare reservations or provisions to create estates for life or in remainder or any limited or conditional estates or any other form of conveyance than a direct present conveyance between the parties, as provided for in standardized approved forms, to be effective upon delivery.

"Sixth: A real estate broker in conferring with parties to obtain facts and information about their personal and property status, other than is necessary to fill in the blank spaces in standardized forms necessary to complete and close transactions in which he is acting as a broker, for the purpose of advising them of their rights and the action to be taken concerning them, is engaging in the practice of law.

"We also hold that respondent's acts in preparing legal instruments for persons in transactions in which he was not acting as a broker, making a charge therefor, amounted to the practice of law; and that his separate additional charges even in transactions in which he was acting as broker tend to place emphasis on conveyancing and legal drafting as a business rather than on his business of real estate broker. The character of this work is indicated by respondent's admissions that he 'elicited in conference what were considered to be the pertinent facts' and 'in the light of the information elicited and the information contained in the abstract of title, selected and determined upon the blank form or forms to be used and then prepared one or more of the instruments mentioned as the respondent . . . in his . . . judgment deemed proper.' This tends to go beyond preparation of simple standardized forms and into the field of legal advice. However, since the matter had not previously been decided in this State and respondent had been frank and helpful to the Bar Administration, we think no substantial penalty should be imposed.

"It is, therefore, ordered and adjudged that respondent pay a fine of One Dollar and the costs herein and henceforth cease and desist the practices we have held to be improper."

I am unable to agree with the first and second conclusions reached by the Missouri court and am of the opinion that they are not wholly consistent with the conclusion contained in the last quoted paragraph to the effect that exercise of judgment by a layman in selecting the proper form of instrument invades the lawyer's field and constitutes the giving of legal advice. Respondent necessarily selected the

form of deed to be used prior to filling in blank spaces using information gleaned from a title report or from the parties. It is my opinion that by so doing he engaged in the unlawful practice of law and that such practice should be enjoined.

There can be no question that respondent violated the provisions of the fifth and sixth conclusions, quoted above, in preparing a deed containing a reference to existing mortgages, the legal effect of which only a lawyer could properly evaluate. In its practical implications, the Voeller-Newman deed went far beyond "a direct present conveyance between the parties."

While the trial court did not find that respondent had prepared either of the two real-estate contracts allegedly prepared by him, I have heretofore quoted his admission that he had prepared real-estate contracts by filling in blanks in printed forms. To my mind, ethical objections present in the Voeller-Newman transaction apply with equal or greater force to the preparation of contracts for the conditional sale of real estate. See *Hubbell v. Ward,* 40 Wn. (2d) 779, 246 P. (2d) 468. Respondent, while looking only to the seller for compensation, attempted to represent both buyer and seller in complicated transactions where their interests were wholly adverse and conflicting. Such practice should also be enjoined.

Appellant refers to the so-called Memphis agreement which was entered into between the American Bar Association and the National Association of Real Estate Boards in 1942. The house of delegates at the annual meeting of the American Bar Association held in Chicago in 1943 appears to have held the view that the Memphis agreement contemplated that in transactions in which they acted as brokers realtors should be permitted to fill in factual data in printed conveyancing forms approved by the local bar association. See 68 A. B. A. 132-141.

Assuming this interpretation to be correct, although the only specific reference to legal documents in the Memphis agreement is to earnest money receipts (which are not involved in this case), I nevertheless feel that, for the reasons

stated above, conveyancing should be confined to the legal profession.

I recognize that the line of demarcation between the legitimate functions of a realtor and those of an attorney cannot be rigidly drawn. (*State v. Chamberlain,* 132 Wash. 520, .232 Pac. 337) However, I am convinced that respondent, in preparing the four deeds involved in this case and in preparing real-estate contracts, invaded the field belonging to the legal profession and was engaging in the unlawful practice of the law, regardless of whether or not he received compensation (directly or indirectly) for this service. The public should be protected from incompetent advice in respect to matters of this importance.

In my opinion, the situation disclosed by this record calls for the exercise of the inherent judicial power of this court to enjoin respondent from continuing to engage in any of the unlawful practices, in which he admittedly has been engaging, in connection with his activities as a licensed real-estate broker. No attempt has been made by appellant in this case to enjoin the preparation by respondent of earnest money receipts in connection with transactions in which he is acting as a broker.

I would reverse the judgment of the trial court with directions to issue an injunction, enjoining respondent from drawing for others any deeds and/or contracts for the conditional sale of real estate, in connection with his business as a realtor or otherwise.

SCHWELLLENBACH, C. J.—I feel obliged to state that this case was reassigned recently to the writer of the majority opinion.

GRADY, J., did not participate.

January 29, 1953. Petition for rehearing denied.