### GANAS v. TSELOS.

No. 20282.  Opinion Filed April 5, 1932.

Rehearing Denied May 24, 1932.

108

Biddison, Campbell, Biddison & Cantrell, Wilson & Duncan, and John C. Gekas, for plaintiff in error.

Leahy, MacDonald, Maxey & Files, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Osage county in favor of the defendant in error, the plaintiff in the trial court, against the plaintiff in error, the defendant in the trial court. Hereinafter the parties will be referred to as they appeared in the trial court.

The action was for the recovery of a money judgment in the sum of $13,014.69. At the time of the filing of the petition, the plaintiff filed an affidavit for attachment in which he averred that the defendant was a nonresident of the state of Oklahoma; that the cause of action arose out of contract; that it arose wholly within the limits of the state of Oklahoma; that the defendant was about to convert his property, or a part of it, into money for the purpose of placing it beyond the reach of his creditors, and that the defendant had executed a conveyance of certain property with the intent to dispose of the same and with the intent to hinder, delay, and defraud the plaintiff in the collection of his claim against the defendant. An order of attachment was issued and served by a levy on certain oil and gas mining leases and the equipment thereon. The defendant executed a bond to dissolve the attachment, and it was dissolved. The defendant filed an answer to the petition of the plaintiff and a cross-petition against the plaintiff in which he prayed for judgment against the plaintiff in the sum of $48,007.58. The plaintiff then filed an amended petition. A motion of the defendant to strike the amended petition and to dismiss the action, upon the ground that the amended petition was a substantial departure in the plaintiff's cause of action, was overruled. The defendant then filed a motion to make the amended petition more definite and certain and to strike. His motion was sustained by the court and the plaintiff filed a second amended petition. The defendant filed a demurrer to the second amended petition on the ground that it failed to state sufficient facts to constitute a cause of action against the defendant. That demurrer was overruled. The defendant then filed an answer to the second amended petition of the plaintiff and a cross-petition against the plaintiff. The plaintiff filed a reply. A jury was waived and the cause was tried to the court. The trial court rendered judgment for the plaintiff in the sum of $6,414.12, which amount, on the motion of the plaintiff, was changed to $7,125.41 for the correction of an error in the summary of the court's finding. Each party filed a motion for new trial and each

motion was overruled. The defendant then appealed to this court and the plaintiff filed herein a cross-appeal.

The defendant contends that the second amended petition should have been stricken and the action dismissed for the reason that the second amended petition was a material departure from the first petition. In the first petition the plaintiff alleged, among other things, that from about April 20, 1924, to July 31, 1926, at the special instance and request of and for the benefit of the defendant, the plaintiff paid out certain sums of money for supplies, labor, taxes, development equipment, and operations of certain oil and gas mining leases therein described, an itemized statement thereof being attached thereto. In the second amended petition the plaintiff, among other things, alleged an oral agreement between the plaintiff and the defendant whereby they agreed to operate and develop the same oil and gas mining leases; that the defendant had invested therein approximately $26,000; that the plaintiff should manage, operate, and develop the property and from time to time pay either to the defendant or for the expenses, operation, and improvement of the property such sums as he could provide; that when the amount paid by the plaintiff to the defendant and for the expenses of development, operation, and improvement of the property, together with the proceeds from the oil runs therefrom paid to the defendant, should amount to the sum which the defendant had invested in the property, the defendant would then assign to the plaintiff an undivided one-half interest in the leasehold premises. The property involved was the same in each case, except that the second amended petition included a leasehold acquired from one Louis Friedman.

In Wynnewood Cotton Oil Co. v. Moore, 54 Okla. 163, 153 P. 633, this court held:

"The statutes, and also the decisions of the courts of this state, are extremely liberal in permitting amendments to pleadings so long as such amendments are in furtherance of justice, and amendments which even change the cause of action may be permitted, provided they do not substantially change the plaintiff's claim."

The pleadings relate to the same subject-matter and to the same transaction. Therein is sought to be recovered the same amount of money for the same wrong. The relationship of the parties and the complex situation arising from their dealings with each other made it possible for many causes of action to be stated in the pleadings without materially changing the claims against each other. The relationship arose, in the language of Mr. Biddison, one of the attorneys for the defendant, "by virtue of an almost hypnotic influence" which the plaintiff seemed to have over the defendant. In the language of the same attorney, "that influence grew out of a relationship which is recognized by the Greek people on account of the participation of one in certain marital and marriage and family relations." That the defendant had invested the sum of $26,000 in oil and gas mining leases, of the operation of which he knew nothing, is admitted, and that the plaintiff operated the property and advanced large sums of money for the operation thereof cannot be denied. Whether the labor performed by the plaintiff and the money advanced by him constituted claims of quantum meruit and quantum valebat, or a claim under an oral contract, it was the same claim for the same amount of money furnished and for the same amount of labor performed. The transactions were the same without regard to the language used in describing the same and without regard to the form of the claim for the recovery thereof. A careful examination of the petition and the second amended petition and the testimony in the case convinces us that there was no such departure as will justify this court in reversing the judgment of the trial court, for the error, if any, did not affect the substantial rights of the defendant and the amendment did not change substantially the claim of the plaintiff. Sections 318 and 319, C. O. S. 1921.

The defendant contends that an agreement to assign an interest in a departmental oil and gas mining lease on Osage tribal land is void, or at least voidable. This is not an action to enforce specific performance of an agreement to assign a departmental oil and gas mining lease. In Goble v. Bell Oil & Gas Co., 97 Okla. 261, 223 P. 371, this court held:

"A lessee of a restricted departmental oil and gas lease may contract for the sale and disposal of the same under such terms and conditions as he might contract in relation to a commercial lease. If the proposed assignment be approved by the Secretary of the Interior, the conditions and terms of the contract for the sale thereof will be given the same effect as if the assignment had passed the title to the assignee at the time of its execution and delivery.

"The contract and record in this cause presents a case for accounting between the parties in accordance with the rule applied

in the case of Woodworth v. Franklin, 85 Okla. 27, 204 P. 452."

In Worley v. Carroll, 110 Okla. 199, 237 P. 120, it was held:

"Indian's lessee who prevented broker from applying for consent to contract with lessee could not defeat broker's right to contract by claim that contract was void for want of consent. Where an oil and gas mining lease on departmental form required the written consent of the Secretary of the Interior to an assignment of an interest therein by lessee, and said lessee refused to execute such assignment though bound to do so by contract, and thereby prevented said third party from applying to the Secretary of the Interior for consent to contract, said lessee cannot be heard to say that said contract is void as a violation of the rules and regulations of the Secretary of the Interior, since said lessee will not be permitted to take advantage of his own wrong in a court of equity. Hertzel v. Weber, Circuit Court of Appeals, Eighth Circuit, 283 Fed. 921, followed."

—and said:

"In the case at bar the lease had been approved; the defendant was the sole owner thereof. She had a right to contract for the disposal of any interest therein. It was her duty upon the performance by the plaintiff to execute to him an assignment on departmental form which could be submitted to the Secretary of the Interior for his approval. She prevented this from being done by her own act and she cannot be heard to invoke the rule of estoppel."

In that case this court quoted from Hertzel v. Weber, 283 Fed. 921, wherein that court held that such a contract was at most only voidable and not void, and that while such a contract was subject to approval by the Secretary of the Interior under the Act of July 1, 1902, it was not in violation of the act. The plaintiff had a right to the assignment as per agreement, and it would then be a matter between the plaintiff and the Secretary of the Interior as to its approval. There is nothing in Midland Oil Co. v. Turner, 179 Fed. 74, Anicker v. Gunsberg, 62 L. Ed. (U. S.) 603, and the other cases cited by the defendant, in conflict therewith. See McKee v. Interstate Oil & Gas Co., 77 Okla. 260, 188 P. 109, and Axelrod v. Osage Oil & Refining Co., 29 Fed. (2d) 712.

The defendant contends that the trial court erred in holding that the taking possession of and making improvements on the leases by the plaintiff took the contract out of the statute of frauds. The trial court held that, inasmuch as the plaintiff had partly performed the contract relied upon, to permit the defendant to interpose the defense of the statute of frauds would be inequitable and unjust and would work a fraud upon the plaintiff. In Chowning v. Graham, 74 Okla. 232, 178 P. 676, this court held:

"Where a contract within the statute of frauds is fully or partially performed, the same is thereby taken out of the statute and is enforceable."

See, also, 27 Corpus Juris, page 343, and Purcell v. Corder, 33 Okla. 68, 124 P. 457. We hold, notwithstanding the statements made in Johnston v. Baldock, 83 Okla. 285, 201 P. 654, and McCaleb v. McKinley, 80 Okla. 38, 194 P. 105, that, under the facts shown by the record in this case, the plea of the defendant of the statute of frauds is not a defense to the claims of the plaintiff. The application of the statute of frauds of Oklahoma is in no wise dependent upon the action of the Secretary of the Interior, and whether or not that officer would recognize possession of property is immaterial in this case.

It is contended by the defendant that the oral contract was indefinite, uncertain, and unascertainable and not sufficient as a basis of an action. The record does not support that contention.

It is contended by the defendant that the court erred in rendering judgment on the basis that a partnership existed. The trial court found that after the purchase of the property at foreclosure sale the defendant and the plaintiff entered into an oral contract whereby it was agreed that the plaintiff was to take charge of both of the leases and to operate and further develop them, and that whenever the plaintiff had advanced a sum equal to the investment of the defendant, less proper credits, the parties should become equal owners of the undivided interest in the leaseholds, and that the defendant would convey to the plaintiff an undivided one-half interest in the property. The court further found that the plaintiff took charge of the property and made improvements and expenditures under the agreement, and that such acts on the part of the plaintiff took the contract out of the statute of frauds and rendered it legal and enforceable, and that an action could be maintained for an accounting. We think the testimony is sufficient to warrant the finding of the trial court that such a contract existed.

It is not necessary for this court to determine whether the contract was one of partnership or joint adventure. There was an agreement to operate the property for the mutual benefit of the plaintiff and the

defendant. Under the rule in this state, such an agreement may be shown by parol evidence, even though it amounts to a partnership. Nix v. Green, 95 Okla. 247, 219 P. 380; Abraham v. Slyman, 90 Okla. 31, 215 P. 931, and Florence v. Thompson, 92 Okla. 156, 218 P. 800. The evidence was conflicting, but the conflict therein was for the trial court to determine, a jury having been waived. Cobb v. Martin, 32 Okla. 588, 123 P. 422.

The defendant contends that the alleged agreement is not an agreement for a partnership nor an agreement of partnership. There is no allegation in the petition that there was existing a partnership between the plaintiff and the defendant, or that the alleged contract was a contract for a partnership. The trial court did not find that a partnership existed between the parties or that there was a contract for a partnership. The court found that a contract existed between the parties whereby the defendant was to assign the plaintiff certain interests in the leases, and that this action could be maintained for an accounting under that agreement between the parties.

The defendant contends that the trial court erred in its findings of fact on the accounting between the parties. The record discloses that the trial court took a great deal of time in considering the accounts between the parties. The exhibits to the plaintiff's petition seem to have been carefully considered by the court in connection with the defendant's cross-petition, and neither party was allowed all that was contended for. The determination of those matters was governed by the proof presented to the court, which presented many controverted questions of fact to be determined by the court, since the intervention of a jury had been waived by the parties. The exceptions to the court's findings were general. No specific objections were raised to the finding of the court and no request to make other or specific findings or to consider the defendant's objection to any particular finding. These objections must be considered in connection with an examination of the entire record in order to determine whether or not there is sufficient evidence to reasonably support the judgment of the trial court.

The defendant contends that an attachment cannot be had in an action for an accounting between partners unless the partnership affairs had been closed. In Graham v. Schooler, 80 Okla 124, 194 P. 1080, this court held contrary to that contention. As to whether or not attachment was a proper remedy, the defendant cannot now complain. In giving the discharging bond the defendant waived all questions and rights as to whether the attachment was rightfully or wrongfully issued. Moffitt v. Garrett, 23 Okla. 398, 100 P. 533; St. Louis Cordage Mills v. Western Supply Co., 54 Okla. 757, 154 P. 646.

The defendant contends that a contract for assignment of a lease for more than one year must be in writing. As authority therefor he cites Woodworth v. Franklin, 85 Okla. 27, 204 P. 452; Nicholson Corporation v. Ferguson, 114 Okla. 16, 243 P. 195, and Price v. Smith, 116 Okla. 27, 243 P. 153. In Woodworth v. Franklin, supra, this court held:

"A parol agreement for the sale of lands, or of an oil and gas lease thereon, will be enforced by the courts where the vendee has paid the purchase price, and taken possession, in good faith, of the premises with the knowledge and consent of the owner and made permanent improvements or development thereon."

The other cases cited by the defendant in support of his contention are not in point.

The defendant contends that the judgment does not conform to the pleadings. The petition, as amended, is far from being a model. The plaintiff alleged in the petition that he has been damaged in the sum of $13,014.69, but the petition made no attempt to state a cause of action for damages, although it did state a cause of action for an accounting. A pleading should be determined from its allegations, taken as a whole, and when it states a cause of action it will support a judgment thereon, even though it may pray for relief to which the pleader is not entitled, or may erroneously designate the nature of the cause of action. The plaintiff's petition herein, when taken in connection with the exhibits attached, conclusively shows that the plaintiff was endeavoring to have an adjustment of his account with the defendant and obtain a judgment for the amount due him under the terms of an oral agreement, and it is sufficient to support the judgment.

In Ft. Smith & W. R. Co. v. Ford, 34 Okla. 575, 126 P. 745, this court said:

"In our system of pleading the formal distinction between actions is abolished, and the petition should state facts constituting the cause of action, plainly and distinctly. In determining the character of the action, we look to the substance of the entire pleading, and not to the mere formal language in which it is expressed. We have regard to the facts constituting the cause

of complaint, and afford the plaintiff the most ample redress which the facts will justify, consistent with the rights of the defendant. It is the policy of our system to trammel the rights of the parties as lightly as possible by technicalities of mere form, but so to shape pleadings as to bring before the court or jury the matter in issue between the parties. Hence, when the facts are plainly and distinctly stated, the action will be regarded as either in tort or contract, having regard, first, to the character of the remedy such facts indicate; and, second, to the most complete and ample redress which upon the facts stated the law affords. The character of the action is to be determined by the nature of the grievance rather than the form of the petition. * * *"

See, also, Cockrell v. Henderson (Kan.) 105 P. 443.

In considering the cross-petition in error of the plaintiff, we note that he complains of only one error, to wit:

"That the court erred in holding and finding that the plaintiff was liable to the defendant upon his indorsement of the note of John Duros and charging the plaintiff with this item."

The record shows that at Crystal Lake, Ill., on April 15, 1923, Joseph G. Duros signed a note in favor of the plaintiff for the sum of $500, payable one year from date. That note was indorsed by the plaintiff to the defendant. The court found that the indorsement of the plaintiff on the back of the note created a liability against the plaintiff and allowed a credit in favor of the defendant in the accounting in the sum of $500, and directed the note to be returned to the plaintiff. We find no error in that ruling in the accounting.

The record in this case consists of 1,328 pages, 1,020 pages of which is the record made at the trial. To include in this opinion a review of the evidence would serve no good purpose. The trial court heard the evidence and examined the briefs of the parties filed after the trial was concluded. made findings of fact and conclusions of law, and rendered the judgments from which the appeals were taken.

We find no reversible error.

The judgments are not clearly against the weight of the evidence. They are affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. RILEY, J., absent.

Note.—See under (1) 21 R. C. L. 572; R. C. L. Perm. Supp. p. 5075; R. C. L. Pocket Part, title Pleading, § 127. (2), R. C. L. Perm. Supp. p. 405. (4), annotation in 49 L. R. A. (N. S.) 113; 25 R. C. L. 567; R. C. L. Perm. Supp. p. 5591; R. C. L. Pocket Part, title Statute of Frauds, § 164.