Thomas L. CLEARY and Cleary Oil Corporation, Inc., Plaintiffs in Error,

v.

Paul P. SEWELL, d/b/a Oil Well Operating Company, Defendant in Error.

No. 37069.

Supreme Court of Oklahoma.

July 2, 1956.

As Amended July 25, 1956.

Rainey, Flynn, Green & Anderson, Oklahoma City, for plaintiffs in error.

H. W. Carver and Tom C. Greer, Wewoka, for defendant in error.

HALLEY, Justice.

This action was filed June 29, 1954, in the District Court of Okfuskee County by Paul P. Sewell, doing business as Oil Well Operating Company, against Thomas L. Cleary, Cleary Oil Corporation, Inc., El Nido Oil Company and Cleary-Streeter, Inc., to recover money due for labor performed and materials furnished in operating an oil and gas lease covering an eighty-acre tract of land in Okfuskee County, and to foreclose a lien claimed by plaintiff against a 11/16th interest in the leasehold estate and equipment thereon.

We shall refer to Paul P. Sewell as plaintiff and to the other parties as defendants, or by name. Plaintiff alleged that on November 1, 1953, he entered into a written contract with defendants whereby he agreed to give his services as operator and to furnish whatever equipment was necessary for the proper development and operation of the lease, and that defendant lessees agreed to pay him for his services and labor and materials supplied by him in the proportion that their interest bore to the entire leasehold estate, but that the owners of only a 5/16th interest had paid him, leaving the owners of a 11/16th interest indebted to him for their share of such expenses. He had duly filed a lien statement and attached a copy thereof to his petition and had also attached a purported copy of the Operating Agreement.

As originally filed, plaintiff's cause of action is based upon a written contract, referred to above as an "Operating Agreement." Neither the copy attached to the petition nor the copy introduced during the trial bears the name of Thomas L. Cleary, whose name appears on one copy above the name "Cleary-Streeter, Inc." The agreement shows that W. L. Griffith owned an 8/16th interest in the lease, El Nido Oil Company, a 1/16th interest, and High Crest Oils Ltd. 2/16th. Thomas L. Cleary afterwards acquired the 8/16th interest held by W. L. Griffith and High Crest Oils Ltd. and defendant Cleary Oil Corporation acquired a 1/16th interest.

Due to numerous and somewhat confusing assignments of interests in the lease, the plaintiff apparently decided to rely upon the evidence and prayed that the pleadings be considered amended to conform to the proof. Defendants deny that such permission was granted. The following occurred:

"By Mr. Carver: Now I would like to have the Court to consider the pleadings amended to conform to the proof?

"By Mr. Rainey: In what manner?

"By Mr. Carver: To conform with what has gone on here.

"By Mr. Rainey: We object to that on the ground that the, we renew our demurrers and that pleadings do not state cause of action against any defendants in this case and furthermore even if they are considered amended as conforming with the alleged proof in this case they are still not cause of action against any defendant in this case.

"The Court: Well, of course he's got a right, for some reason or other they hold you have got a right to do that."

We think the court clearly intended to grant the request of the plaintiff and he should have a lien upon the leasehold estate under section 144, 42 O.S.1951, which provides that one performing labor or furnishing materials for operating or repairing of any oil or gas well shall have a lien upon the entire leasehold, supplies furnished and the oil and gas well itself. This statute cited expressly provides that any person may have such lien if he so acts "under contract, expressed or implied," with the owner of a leasehold for oil and gas purposes.

An implied contract is defined in Section 133, 15 O.S.1951, as follows:

"An implied contract is one, the existence and terms of which are manifested by conduct."

Even if Thomas L. Cleary and Cleary Oil Corporation did not sign the Operating Agreement but acquired their interest at a later date, such interests were acquired prior to the filing of this action and even though the original action was based upon a written contract the pleadings being amended to conform to the proof, which clearly establish an implied contract, we find no merit in defendants' contention that the plaintiff could only recover under the written contract.

At a final hearing on March 7, 1955, the court rendered judgment for the plaintiff against Thomas L. Cleary and Cleary Oil Corporation, Inc., for the sum of $5,373.53 and $500 attorney fees, and for a foreclosure of plaintiff's lien against a 11/16th interest in the oil and gas leasehold estate to satisfy such judgment.

The oil and gas lease here involved is generally referred to as a Departmental Lease, that is, the owner of the land is a Restricted Indian and such lease or any transfer thereof of any interest therein must be approved by the Secretary of the Interior before it is valid. The record shows that this lease was made to Ramsey Oils, Inc. and assigned by the lessee, with proper approval to M. L. McCormack. There are numerous assignments of interests in the lease which were not approved and no requests for approval were made.

Before discussing the various contentions of the defendants, we note that they contend on page 38 of their original brief as follows:

"* * * Unfortunately a substitute reporter recorded most of the testimony and the literally hundreds of garbled passages and mistakes in transcription are beyond correction and repair. * * *"

Defendants first submit that their demurrer to the petition of the plaintiff should have been sustained on the ground that the Operating Agreement attached to plaintiff's petition is clearly void because the non-operators named in the contract do not include the defendants named in plaintiff's original petition. We do not agree with this contention. Let us suppose that all of the non-operators who signed the Operating Agreement had properly assigned their interests to the defendants named in the petition and that the assignee or assignees had assumed the obligations of those named in the Operating Agreement. Such facts should have been alleged in the petition but the trial court doubtless assumed that the obligations to the plaintiff were resting upon those named as defendants and for that reason overruled the demurrer.

At the close of plaintiff's evidence, the defendants demurred to the evidence and the court again overruled their demurrers. W. G. Saffold, named in the Operating Agreement as the owner of an interest in the leasehold, is dropped in the copy of the Operating Agreement introduced in evidence. Cleary-Streeter, Inc., was dropped and El Nido Oil Company was substituted in lieu of Cleary-Streeter, Inc. We find that Thomas L. Cleary, who circulated the Operating Agreement in Calgary, Canada, was responsible for this change. It is clear that the Operating Agreement was erroneous in some respects, but the court, as above pointed out, permitted the pleadings to be amended to conform to the evidence which showed Cleary bound by an implied contract arising from his conduct. 12 O.S. 1951, § 317. Further it was admitted by the defendants that there were some irregularities in the form and terms sufficient to justify the court in disregarding the Operating Agreement in respect to the ownership of the interests in the leasehold estate. We do not think the court erred in overruling the demurrer to the evidence. The evidence shows that the defendant Thomas L. Cleary was present when the Operating Agreement was signed and advised as to the names of the non-operators who owned interests in the lease. The name of Thomas L. Cleary appears in the copy of the Operating Agreement admitted in evidence but it is not clear whether he signed as an individual or for some concern in which he was an officer. The record discloses that

the defendant Thomas L. Cleary appeared to control Cleary-Streeter, Inc. and that his wife did business as El Nido Oil Company. The record further shows that he sent a telegram to the plaintiff asking if he would dismiss this action upon payment of $900, but such payment was never made; that Thomas L. Cleary requested that the plaintiff send him a copy of "our account"; that May 1, 1954, he took an assignment of the lien filed by Midland Supply Company and had the transferee named as Cleary Oil Corporation, Inc. The record shows clearly that Thomas L. Cleary recognized the claim of the plaintiff as operator for the lease and at no time denied that the owners of the lease should pay the plaintiff the operating expenses agreed to be paid.

■ It is claimed that neither the plaintiff nor defendants owned any interest in the leasehold estate because it was a Departmental Lease and provided that any assignment thereof was void unless approved by the Secretary of the Interior. We are familiar with the inhibition against attempting to assign a Departmental Lease without such approval. So far as we know there is no specific time set out for approval of an assignment. This provision is for the protection of the Restricted Indian. We are cited no cases holding that where an unapproved assignment is made, the assignee may not enter into an enforceable contract with a third party for furnishing labor and material for development and operation of the lease. The record does not disclose that there has been any complaint by anyone representing Restricted Indians as to the work and materials furnished by the plaintiff in the development and operation of this lease.

■ Is the foreclosure of plaintiff's lien void because indispensible parties were not made parties defendant? The Midland Supply Company held a lien against the lease which was senior to that claimed by the plaintiff. The record shows that this lien was assigned to Cleary Oil Corporation, one of the defendants here. We cannot agree that Thomas L. Cleary or the Cleary Oil Corporation may escape their just obligations to the plaintiff by acquiring a superior lien against the lease here involved and two other leases which were involved in the Midland lien claim and action to foreclose.

■ The United States Government held a tax lien against W. H. McCormack. It was settled as to the Munnie Bear Lease by W. H. McCormack and wife, M. L. McCormack, according to his undisputed testimony. We do not find where the United States Government or the Midland Supply Company were indispensible parties when their claims were assigned or satisfied.

■ As to the amount of the judgment rendered by the trial court, the defendants claim that it was excessive, but we find no evidence to support such claim. Some of the defendants complain that $200.00 per month for operating the lease was excessive but such amount had been recognized by the owners of the lease and we find nothing to warrant a finding that the judgment rendered was excessive. The plaintiff admitted that the owners of the remaining 5/16th interest in the lease paid their proportionate share of the operating expenses.

■ The defendants complain that the court erred in admitting incompetent, irrelevant and immaterial evidence to the prejudice of the defendant. The rule is well established that where a case is tried to the court and incompetent and irrelevant evidence is admitted that it will be assumed that the court disregarded such evidence in arriving at his conclusion and based his judgment upon such testimony as was relevant and competent. First State Bank of Noble v. McKiddy, 206 Okl. 57, 240 P.2d 1103.

The judgment of the trial court is hereby affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON, BLACKBIRD, JACKSON and HUNT, JJ., concur.