2006-NMCA-139

147 P.3d 1132

Carmen WOOD and Action Oil Company, Inc., a New Mexico corporation, Plaintiffs–Appellants,

v.

Mary CUNNINGHAM, Personal Representative of the Estate of John Cunningham, Johnny Cunningham, d/b/a R & J Enterprises, and Mary Cunningham, Defendants–Appellees.

No. 25,015.

Court of Appeals of New Mexico.

Sept. 14, 2006.

Certiorari Denied, No. 30,038, Nov. 13, 2006.

Atkinson & Kelsey, P.A., Thomas C. Montoya, Albuquerque, NM, for Appellants.

Miller, Stratvert, P.A., J. Scott Hall, Joseph L. Romero, Santa Fe, NM, for Appellees.

## OPINION

VIGIL, Judge.

{1} This case involves the Seller's attempt to rescind a Purchase and Sale Agreement under which Seller's interests in oil and gas leases located on the Navajo Nation were sold to Buyer. The Plaintiffs are the Seller (and its principal) and Defendants are the Buyer (and its assigns). Seller alleged: (1) that a condition precedent to the effectiveness of the Agreement was approval of the assignment of the leases by the Secretary of Interior; and (2) that the essential and controlling consideration Seller was to receive under the Agreement was bonding by the Buyer, and since neither of these requirements were satisfied, Seller was entitled to rescind the Agreement. The district court rejected these arguments, granted Buyer summary judgment, and dismissed Seller's complaint for rescission with prejudice. The district court certified this order as a final order under Rule 1–054(B) NMRA, and Seller appeals. We affirm.

## FACTS

{2} On December 31, 1997, the parties entered into the agreement by which Seller sold to Buyer its interest in two Navajo Oil and Gas Leases, as well as other property not relevant to this appeal. It is undisputed that Seller's assignments of the oil and gas leases must be approved by the Bureau of Indian Affairs (BIA) acting for the Secretary of Interior and the Navajo Nation. In recognition of this fact, paragraph 2 of the Agreement, entitled "Transfer of Title" states:

2. *Transfer of Title.* Seller shall transfer title to the Property to Buyer pursuant to appropriate assignment instruments and bills of sale which shall be prepared by Buyer. The assignment instruments shall be in form acceptable to the Bureau of Indian Affairs ... and Navajo Indian Tribe[ ] and in form recordable in San Juan County, New Mexico. Properly executed assignment instruments shall be delivered by Seller to Buyer at the time of closing. Buyer shall have full and complete responsibility for the recording or filing of all instruments of conveyance.

In compliance with the Agreement, Seller executed an Assignment, Bill of Sale and Conveyance that was recorded with the San Juan County Clerk's Office, as well as BIA Assignment of Mining Lease forms for the two leases. Consistent with the Agreement, Buyer took possession of the leases and wells in February 1998, plugged and abandoned a number of the wells, and has operated the remaining wells ever since. For reasons not disclosed by the record, Buyer did not submit the assignments to the BIA for approval until December 4, 2002. The requests to approve the assignments of the oil and gas leases remain pending before the BIA which has neither approved nor denied the requests. The Agreement does not set forth a deadline by which the approvals of the assignments must be obtained from the BIA and the Agreement does not address the contingency of a failure to obtain the government approval of the assignments.

{3} The government also requires bonds for these types of oil and gas leases. Consistent with this requirement, paragraph six of the Agreement is entitled, "Bonding" and provides:

6. *Bonding.* Buyer shall comply with all bonding requirements imposed by applicable state or federal laws and regulations. Until such time as Buyer secures the required bonding, Seller shall maintain in full force and effect its current bonds applicable to the Property.

To secure the obligation of Buyer to obtain necessary bonding, Buyer shall, on or before the date of closing, purchase a $15,000 certificate of deposit at the Bank of the Southwest, Farmington, New Mexico, and thereafter maintain the certificate of deposit for the benefit of Seller as herein-

after provided. Buyer shall take the steps necessary to effect a pledge of the certificate of deposit to Seller which pledge shall remain in force and effect until such time as Seller's bonds are released by the appropriate jurisdictional agencies. Seller shall be entitled to exercise its rights under an appropriate pledge agreement only in the event that its bonds are foreclosed upon by the appropriate jurisdictional agencies as the direct result of the failure of Buyer to satisfy the plugging and abandonment obligations provided for herein, or in the event the necessary bonding has not been obtained prior to June 30, 1999.

Consistent with its obligations under the Agreement, Buyer purchased a certificate of deposit for $15,000. Seller was only entitled to exercise its rights to the certificate of deposit if (1) governmental agencies made claims against Seller's own bonds for plugging and abandonment costs, or (2) Buyer did not obtain bonds by June 30, 1999. Seller never initiated procedures to obtain the release of its bonds from the government and no government agency has ever made any claims against the bond on the properties. When new bonds were not obtained by June 30, 1999, Buyer paid Seller $15,000. The BIA then informed Buyer that as an assignee of the oil and gas leases, it was required to obtain a bond in the amount of $65,000, and Buyer complied.

{4} The Agreement has a separate provision entitled "Consideration" which states:

5. *Consideration.* As consideration for the sale of the Property, Buyer shall, when necessary, and at his sole risk and expense, plug and abandon any and all of the Wells and reclaim the lands on which said Wells are situated, in accordance with all local, state and federal rules and regulations. Buyer agrees to indemnify and hold Seller harmless from any liability or expense that may become due or payable in connection with the plugging and abandonment of any of said Wells.

As further consideration for the sale of the Property, Buyer shall give to [Seller's principal] ten thousand (10,000) feet of two and three-eighths (2 3/8) inch junk tubing. [Seller's Principal] shall take possession of the tubing in such increments and at such time and place as is agreed on by Seller and Buyer.

{5} On the basis of the foregoing undisputed facts, the district court concluded that governmental approval of the lease assignments is not a condition precedent to either the formation of, or performance under, the Agreement; the district court further concluded that the Agreement continues to be a valid and binding contract between the Seller and Buyer because approval of the assignments reaches only to the lessor/lessee relationship between the government as lessor and Buyer as assignee. Finally, the district court found that Buyer at all times complied with the bond requirements set forth in the Agreement. Accordingly, the district court denied rescission, granted Buyer's motion for summary judgment, and dismissed Plaintiff's complaint for rescission with prejudice. Seller appeals.

## ANALYSIS

{6} The material facts are undisputed. We therefore apply a de novo standard of review to the legal conclusions made by the district court. *See Whittington v. State Dep't of Pub. Safety,* 2004–NMCA–124, ¶ 5, 136 N.M. 503, 100 P.3d 209 (stating that our review of a summary judgment order is de novo when the material facts are undisputed); *Vill. of Wagon Mound v. Mora Trust,* 2003–NMCA–035, ¶ 26, 133 N.M. 373, 62 P.3d 1255 (stating that on appeal from a summary judgment order, this Court decides the legal interpretation of the facts de novo when the relevant facts are undisputed). "If the facts are not in dispute, and only their legal effects remain to be determined, summary judgment is proper." *Roth v. Thompson,* 113 N.M. 331, 335, 825 P.2d 1241, 1245 (1992). We address: (1) whether BIA approval of the assignments constitutes a condition precedent to making the Agreement effective; (2) whether the failure to approve the assignments by the BIA as of the time the complaint was filed constituted such a failure of consideration as to warrant rescission; (3) whether rescission was warranted due to Buyer's failure to comply with the bonding requirements in the Agreement; and (4)

whether the Navajo Nation is a necessary, indispensable party to the litigation.

### 1. Condition Precedent

{7} We conclude that BIA approval of the assignments does not constitute a condition precedent to making the Agreement effective. *W. Commerce Bank v. Gillespie,* 108 N.M. 535, 775 P.2d 737 (1989), states:

> The existence of a contract does not hinge on a condition that qualifies a party's duty to perform. Generally, a condition precedent is an event occurring subsequently to the formation of a valid contract, an event that must occur before there is a right to an immediate performance, before there is breach of a contractual duty, and before the usual judicial remedies are available. *Whether conditions precedent are considered prerequisites to formation of a contract or prerequisites to an obligation to perform under an existing agreement is controlled by the intent of the parties.*

*Id.* at 537, 775 P.2d at 739 (citations omitted) (emphasis added).

{8} The question is whether BIA approval of the lease assignments constituted a prerequisite to the formation of a contract under the Agreement. The Agreement itself demonstrates that this was not the intent of the parties. No performance by Buyer or Seller was expressly made contingent upon approval of the assignments by the BIA. In fact, Seller was expressly obligated to deliver properly executed assignment instruments at the time of closing, and the Agreement specified, "[t]he closing of this transaction shall occur on January 20, 1998, or on such other date as may be mutually agreed to by Seller and Buyer." The instruments were in fact executed and delivered from Seller to Buyer on February 11, 1998. Therefore, approval of the assignments was not a condition precedent.

{9} An example of governmental approval constituting a condition precedent to the formation of a contract is found in *Dechert v. Allsup's Convenience Stores, Inc.,* 104 N.M. 748, 726 P.2d 1378 (1986). That case involved the purchase and sale of a liquor license. *Id.* at 749, 726 P.2d at 1379. In pertinent part, the contract provided that it was subject to approval by all appropriate governmental agencies and authorities and that in the event transfer of ownership of the liquor license was not approved, "[t]his contract shall become null and void, and all monies paid shall immediately be returned to [p]urchaser." *Id.* In light of this language, it was undisputed that governmental approval of the sale was a condition precedent to formation of the contract. *Id.* This is not such a case. Seller agreed to transfer the oil and gas leases to Buyer and Buyer agreed at its sole risk and expense to plug and abandon any and all of the wells and reclaim lands on which the wells were situated in accordance with applicable laws, rules, and regulations. An offer was made to assign the oil and gas leases and the offer was accepted. The contract was thereby formed and became binding. There is no ambiguity. We therefore reject the contention that a condition precedent to the formation of a contract under the Agreement was approval of the assignments by the BIA.

### 2. Substantial Failure of Consideration

{10} To warrant rescission, there must be a "substantial failure" of consideration. *Samples v. Robinson,* 58 N.M. 701, 705, 275 P.2d 185, 187 (1954). We conclude that there was no substantial failure of consideration because approval of the assignments remains pending before the BIA. As we have already noted, the parties made a binding contract, which is in no way contingent upon BIA approval. Further, Buyer received all of the consideration it is entitled to under the Agreement. Whether BIA ultimately approves the assignments of the oil and gas leases will not result in any greater or lesser consideration passing from Seller to Buyer. Stated another way, the pendency of BIA approval to the assignments has not resulted in any injury to Seller. *See Armijo v. Nuchols,* 57 N.M. 30, 35, 253 P.2d 317, 320 (1953) ("The principle is well established that voidable contracts may be rescinded at the election of an injured party[.]"); *Gross, Kelly & Co. v. Bibo,* 19 N.M. 495, 504, 145 P. 480, 483 (1914) ("[A] contract which *may* be set aside at the option of the injured party, is to

be considered as being in effective operation until that party takes measures to enforce his right to rescind." (internal quotation marks and citation omitted)).

{11} We emphasize that this is not a case in which the *buyer* is seeking rescission because of a failure to receive title to the oil and gas leases as a result of the delay from the BIA. We are only addressing whether the *seller* has a right to rescind the Agreement under the circumstances. An analogous case was presented in *Ace Realty, Inc. v. Looney*, 531 P.2d 1377 (Okla.1974). In that case, the seller sought to terminate the rights of the purchaser under a real estate contract due to defects in the seller's title. *Id.* at 1378–79. The contract provided that the seller would have sixty days within which to meet any valid objections made by the buyer to the title. Defects to the title were not corrected within sixty days. *Id.* at 1379. The court held that the provision in the contract providing that the seller would have sixty days within which to meet valid objections to the title were for the benefit of the buyer and that the seller could not take advantage of this provision in the contract in an effort to avoid its own contractual obligations. *Id.* at 1380. In so holding, the court stated that "[g]rounds available to the purchaser for [rescission] are not in general available to the seller for that purpose." (citing *Dimmer v. Spearman*, 178 So. 764 (La. Ct.App.1937)). The *Ace Realty* court concluded that, "in the absence of a contract provision to the contrary, the fact that there is a defect of title to the land sold does not authorize a rescission by the *seller*, since the purchaser may insist on what the seller is able to convey." *Id.* (emphasis added).

{12} *Ace Realty, Inc.,* is an expression of the principle that the failure of a seller to provide a merchantable or marketable title in accordance with the real estate contract does not permit the seller to forfeit the contract. The grounds generally available to the purchaser for rescission are not likewise available to the seller for that purpose. 92 C.J.S. *Vendor & Purchaser* §§ 180, 182, 196 (2000); *see also Youngblut v. Wilson,* 294 N.W.2d 813, 818 (Iowa 1980) (stating that where the seller did not provide merchantable title as required by the real estate contract, the seller was precluded from forfeiting the contract); *Skubal v. Meeker,* 279 N.W.2d 23, 26 (Iowa 1979) (stating that when the seller was in default of the parties' agreement, equity dictates that the forfeiture be canceled because a seller in default cannot forfeit the contract); *Madhavan v. Sucher,* 105 Mich. App. 284, 306 N.W.2d 481, 483–84 (1981) (stating that where seller could not provide a fully insurable marketable title to a house due to a drainage easement across the property, seller could not declare the deposit forfeited upon buyer's refusal to close the transaction).

{13} The purpose of the requirement that the BIA approve oil and gas leases such as those in this case is to effectuate the fiduciary duty the United States Government as trustee owes the beneficiary Indian tribes. *See Am. Sur. Co. of N.Y. v. United States,* 112 F.2d 903, 905 (10th Cir.1940) ("Such approval of the Secretary [of the Interior] was prescribed for the protection of the Indian Tribes and to effectuate the policy of the United States as guardian of the Indians."); *Cleary v. Sewell,* 299 P.2d 524, 528 (Okla. 1956) (stating that approval of the Secretary of the Interior is required for the protection of the Indian tribe and further noting that there is no specific time set for approval of an assignment). This being the case, the Oklahoma Supreme Court has stated:

> A lessee of a restricted departmental oil and gas lease may contract for the sale and disposal of the same under such terms and conditions as he might contract in relation to a commercial lease. If the proposed assignment be approved by the Secretary of the Interior, the conditions and terms of the contract for the sale thereof will be given the same effect as if the assignment had passed the title to the assignee at the time of its execution and delivery.

*Ganas v. Tselos,* 157 Okla. 107, 11 P.2d 751, 753 (1932) (quoting the syllabus written by the court in *Goble v. Bell Oil & Gas Co.,* 97 Okla. 261, 223 P. 371 (1924)). Further, the assignee has a right to the assignment as per the agreement and its validity is solely a matter between the assignee and the government. *Ganas,* 11 P.2d at 753 ("The plaintiff

had a right to the assignment as per agreement, and it would then be a matter between the plaintiff and the Secretary of the Interior as to its approval.").

{14} The Department of the Interior agrees with the foregoing concepts when deciding administrative appeals relating to oil and gas lease assignments. *Petrol Resources Corp.*, 65 IBLA 104 (1982), is a decision of the Interior Board of Land Appeals in connection with the administrative approval of the assignment of an oil and gas lease. Therein, the administrative judge noted that while the assignment of an oil and gas lease is subject to final approval of the Secretary of the Interior, "on the date of execution of an assignment, the assignment is effective as between the parties, *see Frederick J. Schlicher*, 54 IBLA 61, 65 (1981), and all that remains is for the assignee to obtain approval of the assignment." *Petrol Res. Corp.*, 65 I.B.L.A. at 107; *see also Sw. Petroleum Corp. v. Udall*, 361 F.2d 650, 655–56 (10th Cir.1966) (concluding that after the assignment of a mineral lease, the assignee is entitled to statutory protection as a bonafide purchaser although governmental approval of the lease assignment is still pending).

{15} Seller also argues a failure of consideration justifying rescission, in that applications to approve the assignments are not pending before the BIA because the BIA requested that the assignments be re-executed in a June 25, 2003, letter to Buyer. Buyer counters that the applications remain pending because there has been no final written decision disapproving the applications. As discussed above, the BIA's approval of the assignments is not a condition precedent to the formation of the Agreement.

{16} We therefore conclude that the undisputed material facts in this case demonstrate that there has not been a "substantial failure" of consideration which allows Seller to seek rescission of the Agreement.

### 3. Satisfaction of Bonding Requirements

█ {17} Seller argues that recission is appropriate because paragraph six of the Agreement required Buyer to "comply with all bonding requirements imposed by applicable ... federal laws" and simply paying the premiums for Seller's bond did not satisfy applicable federal statutes which require the lessee to actually furnish its own bonds. We fail to see where Seller preserved this specific argument for appeal in the district court. Even if it was preserved, and even if there were a technical violation of a federal statute, grounds for recission would still be lacking. The underlying fundamental purpose of the Agreement was for Seller to sell, and Buyer to buy, Seller's interests in the oil and gas leases. A technical failure to comply with a bonding statute, which did not prevent the Agreement from being carried out, is not sufficient for recission. *See Bank of N.M. v. Priestley*, 95 N.M. 569, 575, 624 P.2d 511, 517 (1981) (repeating the rule stated in *Samples*, 58 N.M. at 705, 275 P.2d at 187–88, "that recission is not available where a breach of contract is not so substantial and fundamental as to defeat the object of the parties in making the contract").

### 4. Necessary, Indispensable Parties

█ {18} Buyer filed a motion to dismiss Seller's complaint in the district court, arguing that the Navajo Nation is a necessary, indispensable party, which Seller opposed. The district court ultimately denied Buyer's motion. Nevertheless, Seller attempts to present us with the question of whether the Navajo Nation is a necessary, indispensable party under Rule 1–019 NMRA, stating it wishes to "protect" any judgment awarding recission from "jurisdictional attack." We conclude that the issue of whether the Navajo Nation is a necessary, indispensable party under Rule 1–019 is not before us in this appeal. The only order certified as a final order for our appellate review is the order granting Buyer's motion for summary judgment. Further, even if Seller was allowed to take a position on appeal that is contrary to the position it took in the district court, *see Zarges v. Zarges*, 79 N.M. 494, 497, 445 P.2d 97, 100 (1968) ("Under ordinary circumstances a party is not permitted to take a position in the court below and, thereafter, to take a contrary position on appeal."), and the Navajo Nation was deemed a necessary party, *see Golden Oil Co. v. Chace Oil Co.*, 2000–NMCA–005,

¶¶ 2, 16, 128 N.M. 526, 994 P.2d 772 (affirming discretionary decision to dismiss complaint where Jicarilla Apache Tribe was found to be a necessary, indispensable party to an action involving assignment of oil and gas leases on Indian land), our Supreme Court has unequivocally stated, "[t]he absence of an indispensable party in New Mexico is no longer considered . . . a jurisdictional defect." *Sims v. Sims,* 1996–NMSC–078, ¶ 53, 122 N.M. 618, 930 P.2d 153. We therefore reject Seller's request to consider this issue.

## CONCLUSION

{19} The order of the district court is affirmed.

{20} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and RODERICK T. KENNEDY, Judges.