# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-10926

United States Court of Appeals
Fifth Circuit

**FILED**

November 19, 2014

Lyle W. Cayce
Clerk

In the Matter of:  VALLECITO GAS, L.L.C.,

Debtor

------------------------------

HARVEY LEON MORTON, Trustee,

Appellant

v.

JOHN YONKERS; JUDY YONKERS; S. FRANK CULBERSON; TOM KIEVIT; KYLE KIEVIT; KERRY BURLESON; DAVID ESPOSITO; KATHLEEN ESPOSITO; STEPHEN MURDOCH; J.L. BRADSHAW TRUST; LYNETTE ESCH; ESCH FAMILY TRUST; ROLAND MURPHY; LEWIS P. LANE; LYNN C. LANE; GRAHAM HADDOCK; R. DAVE ADAMS; CONNIE ADAMS; RAY KOREN; JUDITH ARMOGIDA; THE ROBERT E. AND ROSALIE T. DETTLE LIVING TRUST; DANIEL MANCHA; THE DICKINSON FAMILY REVOCABLE LIVING TRUST; JOHN WOLZ; MILTON DIGREGORIO; BEVERLY DIGREGORIO; ET AL,

Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY and JONES, Circuit Judges, and AFRICK\*, District Judge.

\* District Judge of the Eastern District of Louisiana, sitting by designation.

No. 13-10926

E. GRADY JOLLY, Circuit Judge:

Appellant Harvey Leon Morton ("Morton"), the trustee of the Vallecito Gas, L.L.C. ("Vallecito") bankruptcy estate, appeals the district court's judgment affirming the bankruptcy court's judgment in favor of various owners of overriding royalty interests (collectively, the "Appellees") to a lease that Morton seeks to sell on behalf of the bankruptcy estate. For the following reasons, we AFFIRM the judgment of the district court.

I.

In March 2006, Vallecito purchased a gas lease called the "Hogback Lease," located on Navajo Nation land in New Mexico, from Tiffany Gas Co., LLC. Vallecito subsequently made various assignments of the Hogback Lease. Issues stemming from those assignments form the basis of this appeal. Vallecito's assignments of portions of the Hogback Lease to John Burle, and to a number of other parties, led to litigation (the "*Burle* litigation") in New Mexico in September 2006 over the title to the Hogback Lease. The plaintiffs in the *Burle* litigation filed a notice of lis pendens in San Juan County, New Mexico. The parties purported to settle the case in November 2006, but Michael Briggs, one of the defendants, did not perform under the settlement agreement. The case was resolved on September 28, 2007, when the court held that the settlement agreement was enforceable, and the decision was never appealed.

Vallecito recorded an assignment of the Hogback Lease to Briggs-Cockerham, LLC, on April 27, 2007, after the *Burle* litigation had purportedly settled, but before the settlement had been enforced.[1] Between June 2007 and January 2009, the Appellees purchased the overriding royalty interests at

---

[1] The assignment was apparently executed on December 8, 2006, and states that it was "effective" at 7:00 AM on May 21, 2006.

No. 13-10926

issue in this appeal from Briggs-Cockerham. No approval of the transfers was sought from the Navajo Nation.

On November 14, 2007, Vallecito filed for Chapter 11 bankruptcy. Morton was appointed as trustee of the Vallecito estate on January 14, 2008. The Hogback Lease is apparently Vallecito's only significant asset, and Morton has sought to sell the Hogback Lease, subject only to the Navajo Nation's royalty, to Vision Energy, LLC, for the benefit of Vallecito's creditors. Under the bankruptcy plan, Briggs-Cockerham and Briggs apparently disclaimed any interest in the Hogback Lease. Morton did not consult the San Juan County, New Mexico, records, however, and he did not learn that the Appellees had overriding royalty interests, which they had purchased from Briggs-Cockerham, until November 2009.

Morton filed an adversary proceeding against the Appellees in March 2010, seeking to void the overriding royalty interests on grounds the Navajo Nation had not approved the transfer of those interests, as required by the Navajo Nation Code (the "Navajo Code"). The bankruptcy court concluded that Morton could not raise the lack of Navajo approval, and it also concluded that the Appellees, who purchased overriding royalty interests after the bankruptcy filing, were entitled to a credit against the estate for the amount they paid because they had purchased the assignments in good faith and without knowledge of the bankruptcy filing. Morton appealed to the district court, which affirmed the bankruptcy court's judgment, and he now appeals to this Court. In this appeal, he argues that he can void the overriding royalty interests based on lack of Navajo Nation approval and that the filing of a lis pendens in the *Burle* litigation either provided constructive notice of the bankruptcy filing or otherwise binds the Appellees to the bankruptcy plan.

3

No. 13-10926

II.

"We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo." *Gamble v. Gamble (In re Gamble)*, 143 F.3d 223, 225 (5th Cir. 1998). We review evidentiary rulings, however, only for an abuse of discretion. *In re Repine*, 536 F.3d 512, 518 (5th Cir. 2008). With these standards in mind, we turn to the issues in this case.

A.

Morton's primary contention on appeal is that he can raise the lack of Navajo Nation approval to void the Appellees' overriding royalty interests. The Navajo Code provides:

> No overriding royalty may be created by any transfer authorized hereby without the written consent of the Minerals Department of the Navajo Nation nor shall such overriding royalty be approved if it is determined by the Minerals Department that it will have such an adverse economic impact that it may prevent full recovery of the mineral reserves.

18 N.N.C. § 605(A)(6). It is undisputed that the Appellees never sought approval from the Navajo Nation for the transfers of the overriding royalties. Moreover, Morton submitted into evidence a letter submitted by an attorney in the Navajo Nation Department of Justice, stating that any "purported overriding royalty interest is invalid under the applicable provisions of the Navajo Nation Code and is completely void." The bankruptcy court struck the letter as inadmissible hearsay.

1.

First, we conclude that the bankruptcy court did not abuse its discretion in excluding the letter. Morton does not contest that the letter was hearsay but instead argues that it was admissible under exceptions in the Federal Rules of Evidence for public records under Rule 803(8), statements affecting a property interest under Rule 803(15), or the general hearsay exception found

4

in Rule 807.  Trustworthiness is the linchpin of these hearsay exceptions.  *See United States v. Williams*, 661 F.2d 528, 531 (5th Cir. 1981); *see also* Fed. R. Evid. 807(a)(1).  We are persuaded by the district court's thorough explanation that the letter is untrustworthy, in large part because it was drafted by Morton's counsel and was prepared after Morton's counsel provided the Navajo Nation official with only one side of the story.

2.

Next, we turn to Morton's primary contention, namely whether Morton may nonetheless void the overriding royalty interests based solely on the fact that the Navajo Nation has not approved them.  The district court treated the issue as moot after it excluded the letter.  Although we do not find that the exclusion of the letter moots the issue, we conclude that the bankruptcy court properly held that Morton could not raise the lack of approval.

a.

We turn first to those cases interpreting contractual provisions that are similar to the Navajo Code provision here.  A New Mexico appellate court interpreted a contractual provision that required approval of an assignment by the Bureau of Indian Affairs (the "Bureau").  *Wood v. Cunningham*, 147 P.3d 1132 (N.M. Ct. App. 2006).  In *Wood*, the seller of rights to certain oil and gas leases on Navajo Nation land sought to rescind an agreement with the buyer of those leases because the buyer had not obtained the Bureau's approval.  *Id.* at 1133.  The court concluded that the approval provision was not a condition precedent to contract formation because "[a]n offer was made to assign the oil and gas leases and the offer was accepted.  The contract was thereby formed and became binding." *Id.* at 1135.  Additionally, the court noted that the seller suffered no injury from the buyer's failure to obtain Bureau approval.  *Id.*  The court emphasized that "this is not a case in which the *buyer* is seeking rescission because of a failure to receive title to the oil and gas leases as a result

5

of the delay from the [Bureau]." *Id.* at 1136. Thus, the court recognized that a party *protected* by a provision is the appropriate party to *invoke* that provision in litigation.

The Navajo Code provision is analogous to the contractual provision in *Wood* in several respects. As in *Wood*, it appears that Briggs-Cockerham and the Appellees entered into valid contracts for the sale and purchase of the overriding royalty interests. Although Morton points out that Briggs apparently sold these interests fraudulently, the Appellees had no knowledge of the fraud. Instead, the Appellees paid Briggs-Cockerham consideration, and Briggs-Cockerham transferred the necessary documents. Like the contract provision in *Wood*, the Navajo Code provision does not serve to protect Morton's interests. The Navajo Code contemplates approval as a means to protect the Navajo Nation from exploitation. The Navajo Code, for example, prohibits approval of an assignment "if the Minerals Department determines that it is not in the best economic interest of the Navajo Nation." 18 N.N.C. § 605(B). Thus, the Navajo Code protects the Navajo Nation, and there is no indication that Morton falls within the scope of its protection.

Morton attempts to distinguish *Wood* because that case involved two parties to a contract. According to Morton, he can raise the Appellees' non-compliance with the Navajo Code because he is not a party to the overriding royalty transactions. As the bankruptcy court correctly noted, "it would be anomalous to conclude that non-protected third parties, who are strangers to the agreement, have greater rights than the parties to the agreement themselves." *In re Vallecito Gas, LLC*, 461 B.R. 358, 383 (Bankr. N.D. Tex. 2011). Although Morton pointed out at oral argument that he is an innocent party seeking to quiet title, the bankruptcy court pointed out that the overriding royalty holders are similarly innocent. *Id.* at 401. We conclude that the Navajo Code is analogous to the contractual provision in *Wood*, and we see

No. 13-10926

no basis to allow a third party like Morton to raise lack of compliance with that provision to void the overriding royalty interests.

b.

Next, Morton argues that the Appellees' analogy to contract provisions is inapposite because it has raised a Navajo Nation statute, which has the effect of a state law. He contends that "[s]ection 605 is more akin to a state licensing or permitting regime than a statute enacted by a guardian government for the benefit of its ward." We agree with Morton that this issue bears similarities to an illegality defense in contract law. Morton has not cited any authority for his proposition, however, that a third party may assert such a defense to void a contract between two other parties.

Generally, only parties to a contract can raise an assertion of illegality. *See In re Peterson's Estate*, 42 N.W.2d 59, 66 n.7 (Minn. 1950) ("Usually the issue or defense of illegality may be raised only by the parties or those claiming under them and not by third parties."). Two cases illustrate this principle. First, the Alabama Supreme Court held that a licensed real estate broker may not invalidate a real estate contract that an unlicensed broker made with a third party on grounds that the unlicensed broker failed to comply with the licensing statute. *Marx v. Lining*, 165 So. 207, 210 (Ala. 1935). The court explained that the licensed broker, "in nowise connected with that contract [between the unlicensed broker and the seller], and his property rights in no way affected thereby, cannot plead the invalidity of the contract." *Id.*[2] The

---

[2] At first glance, Morton would appear able to distinguish this case from *Marx* because the overriding royalty interests affect the property rights of the bankruptcy estate. The facts of *Marx* are actually a useful comparison, though. In *Marx*, two individuals formed two separate contracts with the seller, and the licensed realtor sought to void the unlicensed realtor's contract. Obviously, the unlicensed broker's contract affected in some way the licensed broker's entitlement to the money under his contract because the seller claimed that he only owed one of them. Similarly, the overriding royalty interests here affect the

No. 13-10926

Washington Supreme Court addressed a similar argument in the context of a statute prohibiting the unauthorized practice of law. *See Ferris v. Snively*, 19 P.2d 942, 946–47 (Wash. 1933). In *Ferris*, a lawyer had hired a law clerk to perform work that included legal services that the law clerk was not licensed to perform. *Id.* at 943–45. Thereafter, the lawyer died, and the executrix of the lawyer's estate sought to avoid paying compensation to the law clerk for some of these services on grounds they violated the "licensing" statute, but the court held that "[w]hile this might have been a good defense if interposed by the client [the recipient of the unlicensed services], it is not available to *this* defendant." *Id.* at 946 (emphasis added).

Morton has not cited any authority to suggest that the Navajo Code provision should fall outside what we believe to be a well-reasoned general rule, *i.e.*, that a third party like Morton cannot assert a statute like the Navajo Code provision to void the overriding royalty interests. Instead, it appears to us that the Navajo Code provision fits neatly into the framework of *Marx* and *Ferris*. Morton has invoked a statute that is not intended to and does not protect his interests, in an attempt to void contracts between other parties. Additionally, we note that *Ferris* involved an executrix of an estate who, like Morton, would owe heightened duties to others. Because the Navajo Code provision does not purport to protect the rights of a bankruptcy trustee like Morton, we believe that he cannot assert this defense.

In sum, whether we treat the Navajo Code provision as analogous to a contractual condition or to state licensing laws, the result is the same. Morton, a bankruptcy trustee who falls outside the Navajo Code's protection, cannot

---

bankruptcy estate, but the bankruptcy estate was in no way involved in the original contract formation establishing the overriding royalty interests.

raise the Navajo Code to void the contracts between the Appellees and Briggs-Cockerham.

## B.

Finally, Morton raised additional arguments that a lis pendens filing in the *Burle* litigation either placed the Appellees on constructive notice of Vallecito's bankruptcy or that the Appellees are bound by the bankruptcy plan, which resolves the title issues to the Hogback Lease that were also at issue in the *Burle* litigation. Both the bankruptcy and district courts concluded that the *Burle* litigation and the Vallecito bankruptcy proceedings were two separate actions. Thus, there was nothing in the *Burle* litigation that would place the overriding royalty interest holders on notice that Vallecito had declared bankruptcy, and the New Mexico lis pendens statutes do not bind these parties to the subsequent litigation surrounding the title to the Hogback Lease throughout the Vallecito bankruptcy. The district court fully reviewed the arguments, and we find no error in its conclusions.

## III.

Our review of all the arguments raised by the parties, the evidence in the record, and the opinions of the bankruptcy and district courts, leads us to conclude that the judgment of the district court should be AFFIRMED in all respects.

AFFIRMED.